No. _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

Richard Green, a US Citizen

*Defendant-Appellant,*

v.

Phuong Hoang Dinh (Green) a Citizen of Vietnam
(no resident status in the US)

*Plaintiff-Appellee.*

On Appeal from the Alaska Superior Court
Third Judicial District at Palmer, Alaska
3PA-19-01073CI
Judge Johnathan Woodman

## APPELLANT'S OPENING BRIEF

The Law Office of Wayne Anthony Ross
10300 Kasilof Blvd.
Anchorage, AK 99507

Wayne Anthony Ross

*Attorney for Appellant Richard Green*

# CORPORATE DISCLOSURE STATEMENT

NOT APPLICABLE

Date: September _5_, 2020

The Law Office of Wayne Anthony Ross

Wayne Anthony Ross

*Attorneys for Appellant Richard Green*

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .............................................................. i

TABLE OF AUTHORITIES ................................................................................ v

INTRODUCTION.......................................................................................... 1

JURISDICTIONAL STATEMENT ......................................................................... 5

STATUTORY [AND REGULATORY] AUTHORITIES ...................................... 6

ISSUE(S) PRESENTED ................................................................................ 6

STATEMENT OF THE CASE ........................................................................... 7

SUMMARY OF THE ARGUMENT ................................................................... 16

ARGUMENT ............................................................................................. 17

Case 3:20-cv-00255-JMK   Document 6   Filed 10/08/20   Page 3 of 128

I. THE CONTRACT FALLS UNDER THE CONVENTION ..................17

    A.THE AWARD IS RES JUDICATA .........................................19

    B.THE COURT ERRED IN REFUSING TO DISMISS THE STATE COURT ACTION FOR LACK OF SUBJECT MATTER JURISDICTION................................................................. 21

    C. THE COURT ERRED IN SETTING ASIDE OR RENDERING THE INTERNATIONAL INDONESIAN FOREIGN ARBITRATOR'S AWARD, "NULL AND VOID" ................................................28

    D. PLAINTIFF-APPELLEE HAS LOST THE ABILITY TO VACATE, SET ASIDE OR DECLARATION OF "NULL AND VOID" OF THE ARBITRATOR'S AWARD ...................................................32

II. UNCONSCIONABILITY OF THE CONTRACT AS A WHOLE IS A DECISION FOR THE ARBITRATOR NOT THE COURT.............33

III. THE QUESTION OF ARBITRALITY IS FOR THE ARBITRATOR NOT THE COURT......................................................................35

IV. ARBITRATION

    A. THE COURT ERRED IN DENYING TO COMPEL ARBITRATION ......................................................................37

    B. THE COURT ERRED IN STAYING AN ACTIVE ONGOING INTERNATIONAL ARBITRATION ......................................38

IV. THE COURT ERRED IN DENYING TO AMEND THE PLEADINGS ......................................................................................41

V. THE COURT ERRED IN FINDING WAIVER ...............................43

    a. Alleged waiver in the Palmer Superior Court ...................43

    b. The Indonesian Process ...................................................44

c. Indonesian Law cannot find waiver ……………………………..45

d. What is waiver in the United States? ……………………..…46

e. Participation in Arbitration invalidates claim of waiver ……..52

f. Waiver cannot be obtained under the law …………………..53

    a. Waiver by failure to pled arbitration and award ……...56

    b. Waiver through discovery …………………………..59

    c. Prejudice …………………………………………….63

g. Plaintiff-Appellee's unclean hands ……………………….68

h. The Court's unclean hands …………………………..…..70

CONCLUSION …………………………………………………….. 93

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM #1

ADDEMNUM #2

ADDEMDUM #3

EXHIBIT LIST

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Albano…………………………………………………………………………17

American Dredging Co. v. Miller,

    510 U.S. 443, 453 (1994),…………………………………………………28

Ass'n of Flight Attendants v. Rep. Airlines,

    797 F.2d 352……………………………………………………………30

Belke v. Merrill Lynch,

    693 F.2d 1023, 1025 (11th Cir. 1982)………………………………51, 52

Blood v. Kenneth Murray Insurance

    68 P.3d 1251 (Alaska 2003)………………………………………………54

BG Grp. PLC v. Republic of Argentina

    572U.S.25(2014) • 134S.Ct.1198 • 188L.Ed.2d220 •…………....……52, 53

Booth v. Hume Publishing, Inc,

    902 F.2d 925……………………………………………………………30

Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___,

    126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006)……………………31, 32

Carcich v. Rederi A/B Nordie,

    389 F.2d 692, 696 (2d Cir. 1968)…………………………………………57

Caribbean Trading v. Nigerian Nat. Petroleum,

    948 F.2d 111……………………………………………………………30

Carter v. Carter Coal Co.

    298 U.S. 238 (1936) 298 U.S. 238•56 S. Ct. 855…………………........22

COLORADO RIVER WATER CONS. DIST. v. US…………………………………18

D.H. v. Gottdiener,

462 F.3d 95 ……………………………………………………....…………30

Dial 800 v. Fesbinder

118 Cal. App. 4th 32 (Cal. Ct. App. 2004) …………………………18

ESAB Grp. Inc. V. Zurich Ins. PLC,

685 F. 3d 376, 390 (4th Cir. 2012)…………………………………17

Fisher v. A.G. Becker Paribas Inc. ,

791 F.2d 691, 694 (9th Cir. 1986)…………………………………

First Options of Chicago, Inc. v. Kaplan

514 U.S. 938 (1995) • 115 S. Ct. 1920…………………………80

Freytag v. Commissioner, 501 U.S. 868, 894 n. 2 (1991……………………44

Fawzy v. Fawzy 199 N.J. 456 (N.J.2009)…………………………………17

G.C. and K.B, Inc. v. Wilson

326 F.3d 1096 (9th Cir. 2003)…………………………………18, 29

Johnson v. Zerbst,

304 U.S. 458, 464 (1938);………………………………………44

Howsam, 537 U.S. at 79, 84-85 …………………………..……32, 6, 48, 49

Kakhri v. Marriot Int'l Hotels, Inc.

201 F. Supp. 3d 696……………………………………………28

Kirkpatrick………………………………………………………38

Klosterman v. Choice Hotels International, Inc. United States District Court,,

2005 Case No. CIV-05-076-E-BLW…………………………………50

Martin v. Yasuda 829 F.3d 1118 (9th Cir. 2016)……………………62-64

Mastrobuono v. Shearson Lehman Hutton, Inc., ante, at 52…………………80

McAlpine v. Priddle

321 P.3d 345 (Alaska 2014) …………………………………29

Mitsubishi Motors Corporation. V. Soler Chrysler Plymouth, Inc.

Case 3:20-cv-00255-JMK   Document 6   Filed 10/08/20   Page 7 of 128

*63 U.S. 614, 631 (1985);* ……………………………………......………*17, 23*

*Morse,* 87 U.S. at 451…………………………………………………….49

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp*

    *460 U.S. 1 (1983)* ……………………………………………...*6, 46*

*Nagrampa v. Mailcoups, Inc.*

    <u>*469 F.3d 1257 (9th Cir. 2006)*</u> …………………………………*31, 33*

*Necchi Sewing Machine Sales Corp. v. Carl, supra,*

    *260 F. Supp. at 668*…………………………………………………*56, 57*

*Network Cinema Corp. v. Glassburn,*

    *357 F. Supp. 169, 171 (S.D.N.Y. 1973)*………………………………*57*

*NUCLEAR INSTALLATION, ETC. v. Nuclear Services,*

    *468 F. Supp. 1187 (E.D. Pa. 1979*………………………………*56, 66*

*Polimaster Ltd. v. RAE Systems, Inc,*

    *623 F.3d 832*…………………………………………………………*18*

*Preston v. Ferrer, 552 U.S. 346 (2008)*…………………………………*19*

*Prima Paint Corp. v. Flood Conklin Mfg. Co.,*

    *388 U.S. 395, 403-04, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967)*…….*31*

*Rain CH Carbon, LLC v. Conoco Phillips Co.,*

    *674 F 3d. 469, 62 (5th Cir 2012)* ……………………………………*16*

*RENT-A-CENTER, WEST, INC., v. Antonio JACKSON.*

    *561* U.S. 63 ……………………………………………….…*31, 32*

*Reynolds v. Lomas*………………………………………………………*18*

*Russell v. United States*………………………………………………*18*

*Scherk v Alberto-Culver Co*

    *417 US 506 (1974)*……………………………………….*14, 16, 46, 65*

<u>*Sussex v. U.S. Dist. Court for the Dist. of Nev. (In re Sussex)*</u>

Case 3:20-cv-00255-JMK   Document 6   Filed 10/08/20   Page 8 of 128

781 F.3d 1065 (9th Cir. 2015 …………………………..………79-80

*Service Emp. Intern. Union v. Office Ctr,*

  *670 F.2d 404*……………………………………………………………………*30*

<u>*Sabbatino*</u>, …………………………………………………..………37, 38

<u>*Underhill v. Hernandez*</u> …………………………………………..…………37

*United States v. Olano*

  *507 U.S. 725 (1993)*……………………………………………………………*44*

*United States District Court Case*

  *No. 18-11192*……………………………………………………………………*16*

*United States District Court Case*

  *No. 8:18-cv-03546-PWG*………………………………………………………*28*

*U.S. v Park Place Assoc. Ltd,*

  *563 F. 3d 907, 921 (9th Cir. 2009)*…………………………

*Van Ness Townhouse,*

  *862 F.2d at 759*………………………………………………………*62-63*

*Victor v. State Farm Fire Cas. Co.,*

  *795 F. Supp. 300, 304 n. 6 (D. Alaska 1992)*………………………………*55*

<u>*Vespe Contracting Co. v. Anyan Corp.,*</u>

  *399 F. Supp. 516 (E.D.Pa.1975*…………………………………………….*56*

<u>*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior*</u>

<u>*Univ.,*</u> <u>489 U.S. 468, 68, 109 S.Ct. 1248, 103 L.Ed.2d 488,</u>………..……………*32*

*Wausau Ins. Cos. v. Van Biene,*

  *86 P.2d 584, 588 (Alaska 1993)*………………………………………………*56*

*Wenmar v. Ecosmatre Planet Friendly*

  *No. A08-1973 (Minn. Ct. App. 2009)*…………………………………………*30*

**Statutes**

28 U.S. Code § 1332……………………………………………………3

9 U.S. Code § 16. Appeals……………………………………………3

28 U.S. Code § 1367……………………………………………………3


The Convention for the Recognition and Enforcement of Foreign Arbitral Awards otherwise known as the New York Convention 1958

9 U.S. Code § 202…………………………………………………16, 20

9 U.S. Code § 203…………………………………………………14, 20

9 U.S. Code § 205…………………………………………………17, 22

9 U.S. Code § 207…………………………………………………17, 20


Federal Arbitration Act

9 U.S. Code § 1…………………………………………...………15, 20

9 U.S. Code § 2……………………………………………………22

9 U.S. Code § 4…………………………………………...………23, 77

9 U.S. Code § 9……………………………………………………23

9 U.S. Code § 12……………………………………………………..3, 29


Alaska Arbitration Act (pre-2007 contracts)

AS 09.43.020(a) …………………………………………………..75

AS 09.43.020(b)…………………………………………………..75


Alaska Uniform Revised Arbitration Act

AS 09.43.300; (a)……………………………………………………24

AS 09.43.330 ………………………………………...…………77

AS 09.43.340 …………………………………………………24, 76

AS 09.43.350 …………………………………………………60, 71

AS 09.43.490 ............................................................…….24

AS 09.43.500 ............................................................….24


Acts of State Doctrine ...................................…...17, 36, 37

Indonesian Arbitration Law 20 of 1999......................17, 35, 36, 43

**Rules**

AK R. Civ. P. 8(c) ......................................................…40, 54

F. R. Civ. P. 8(c) ...................................................…..………40

**Other Authorities**

Black's Law Dictionary which defines **abuse of discretion** as,

"**abuse of discretion**: an error of judgment by a trial court in making a ruling that is clearly unreasonable, erroneous, or arbitrary and not justified by the facts or the **law** applicable in the case compare clearly erroneous"

# INTRODUCTION

The parties signed an Indonesian contract in 2014 with three arbitration clauses contained over a two-page contract. (Ex. 6) The main arbitration clause calls for "any and all disputes" to be submitted to binding arbitration to the religious tribunal in Indonesia. Defendant-Appellant did not receive the government verified contract arbitrator's appointment from Indonesian until March 16, 2020. (Ex. 6)

The Plaintiff-Appellee, represented by counsel, made a calculated decision and filed in the Alaska Superior Court in violation of her International agreement to arbitrate. The Defendant-Appellant, defended his position and participated in interim/preliminary matters in the Alaska Superior Court until the arbitrator was appointed from Indonesia and was ready to act. (Ex. 11)

Immediately after receiving verified contract and the notice of the appointment of the arbitrator, (Ex. 6) the Defendant-Appellant he issued his demand for arbitration. (Ex. 9 and 10) The arbitrator accepted his appointment, and the arbitration schedule was set according to the law. (Ex. 11) The Defendant-Appellant followed the arbitrator's schedule to adjudicate the arbitrable claims in the International Indonesian Foreign Arbitration as the parties contracted for in and under Indonesia. (Ex. 6)

The Plaintiff-Appellee initially refused arbitrate in violation of her contractual agreement. So, the Defendant-Appellant filed a motion in the Alaska Superior Court to compel the Plaintiff-Appellee to arbitration. (Ex. 14) The Plaintiff-Appellee made an appearance in the arbitration proceedings in April 2020 and begin participating prior to the Alaska Superior Court's ruling on Defendant-Appellant's motion to compel arbitration. (Ex. 17) Plaintiff- Appellee moved the Palmer Superior Court for an extension of time to oppose arbitration that was granted (Ex. 16 and Ex. 20) and then during the Palmer Superior Court's extension of time she made her appearance (Ex. 17) and participated in the ongoing arbitration seeking extension of time to file her required briefs, exhibits, etc. (Ex. 18) Plaintiff-Appellee being dissatisfied with the Arbitrator's Partial Final Award, (Ex. 25) then moved the Palmer Superior Court to stay the active arbitration proceedings. (Ex. 19)

The Plaintiff-Appellee then missed two consecutive hearings (Ex. 21) that were scheduled in the International Indonesian foreign arbitration and as required by law the arbitrator issued a default award in favor of the Defendant-Appellant on May 17, 2020. That award was corrected, at the Arbitrator's initiation, on July 5, 2020 (Ex. 5)

On May 17, 2020 the International Indonesian Foregin arbitration was completely finished. On May 19, 2020 the Alaska Superior Court then issued an

order denying the Defendant-Appellant's motion to compel, (Ex. 24) and issued an

order staying the International Indonesian foreign arbitration (Ex. 23) despite the

Palmer Superior Court not having subject atter jurisdiction over official

government acts in Indonesia. The Defendant-Appellant sought reconsideration

(Ex. 26) of both of the court's erroneous orders in June 2020. The Alaska Superior

Court denied the motion for reconsideration. (Ex. 36)

All of the arbitration proceedings had been completed (Ex. 31) and there was

no appeal left in the arbitration proceedings for the Plaintiff-Appellee and Plaintiff-

Appellee's ability to move for vacatur of either award had already passed. (9 U.S.

Code § 12) The Defendant-Appellant then pled to the Alaska Superior Court for

dismissal based on a lack of subject matter jurisdiction, (Ex. 37, 38) The Plaintiff-

Appellee submitted no filing in opposition to the Defendant-Appellant's several

motions to dismiss with prejudice and the Alaska Superior Court without any

opposition filed by the Plaintiff-Appellee (Ex. 45) denied Defendant-Appellant's

motion to dismiss with prejudice, declaring the arbitrators award "null and void".

(Ex. 46 and Addendum #2)

The Alaska Superior Court has no statutory authority to stay an ongoing

International Indonesian foreign arbitration proceeding, no statutory authority to

deny Defendant-Appellant's motion to dismiss with prejudice, and has no statutory

authority to deny amending the pleadings when newly discovered evidence

challenged subject matter jurisdiction under state and federal law. There is no provision in the Indonesian laws to declare an international law to declare an International Indonesian foreign arbitrator's award as "null and void". (Addendum #3)

The court further erred in not referring to the Arbitrator the question of the contract "as a whole as being unconscionable" and also erred in not referring to the Arbitrator the "dispute of arbitrability and the dispute of waiver". All of these disputes are within arbitration and are covered in the broad arbitration clause, "any and all disputes" and are thus properly before the Arbitrator and not the court.

The Alaska Superior Court has no subject matter jurisdiction in this matter.

The Palmer Superior Court abuses its discretion of power.

This court should note and review that the Plaintiff-Appellee bears a heavy burden of proof in this case. (Ex. 50) details the Plaintiff-Appellee had planned this whole immigration and court scam from the beginning as a means of gaining a green card and a pathway to American Citizenship. These documents were recovered from her iPad back up files.

Exhibit. 51, details the Plaintiff's-Appellee's written demands, the killing of an unborn child, threats of more violence and physical abuse perpetrated by the Plaintiff-Appellee in her efforts to force the Defendant-Appellant into her immigration scam using the children as leverage against the Defendant-Appellant.

# JURISDICTIONAL STATEMENT

(1) The Palmer Superior Court wrongly asserted both personal and subject matter jurisdiction when Plaintiff-Appellee filed her case in violation of an international foreign contract that was negotiated and executed under the laws of Indonesia and that contained a clear provision calling for arbitration of "any and all disputes" before a religious tribunal in Indonesia. (Ex. 6)

(2) The United States District Court has subject matter jurisdiction of the parties under, 28 U.S. Code § 1332. The United States District Court has original jurisdiction under 9 U.S. Code § 203. The United States District Court also has supplemental jurisdiction under 28 U.S. Code § 1367. The United States District Court has appellant jurisdiction under 9 U.S. Code § 16. Appeals

(3) Orders were issued by the Palmer Superior Court between February, 2020 and September 4, 2020. Notice and reservation of right to file appeal was first filed on June 30, 2020 (Ex. 32) and on September 2, 2020 (Ex. 47) and in open court the Defendant-Appellant's reservation of right to file an interlocutory federal appeal was renewed and recognized as still active by the Palmer Superior Court. In fact, the court reminded and encouraged the Defendant-Appellant of his right to pursue this appeal if he chose to.

(4) This appeal is from final orders from the Palmer Superior Court that disposes of all parties' claims, as follows:

1. Order denying dismissal for lack of subject matter jurisdictional (Ex. 27, 29, 32, 39, and

2. A final order setting aside the International Indonesian Foreign Arbitration Award as "null and void". (Ex. 44, 45, 46) and (Addendum #2)

3. A final order denying motion to compel arbitration and order staying an active ongoing International Indonesian Foreign Arbitration. (Ex. 23, 24, 36)

4. A order denying the Defendant-Appellant's motion to amend the pleadings based on newly discovered evidence. (Ex. 30, 41)

## STATUTORY [AND REGULATORY] AUTHORITIES

"All relevant statutory authorities appear in the main text within this brief iin the argument sections"

## ISSUE(S) PRESENTED

Indonesian law is the governing law of the parties 2014 contract. (Ex. 6)

Indonesian, International, Federal, Alaska laws and case law does not give the Palmer Superior Court the statutory authority to override the acts of other governments and transnational tribunals and does not allow for litigation or re-litigation in the United States Courts issues subject to International Arbitration clauses.

The State Courts do not have subject matter jurisdiction over an arbitration or awards that fall under the Convention for the recognition and enforcement of foreign arbitrational awards (The New York Convention 1958).

The questions of unconscionability of the contract as a whole, the question of arbitrarily and waiver is for the Indonesian Arbitrator and not for the United States Court's to decide.

The Court erred in issuing an order staying an International Indonesian Arbitration proceeding, which had already been completed.

The International Indonesian Foreign Arbitration is complete and the State Court has no statutory authority to declare an International Indonesian award "null and void". Such an act is a violation of the Acts of State Doctrine.

The court erred in refusing to allow the Defendant-Appellant to amend the pleadings with the new evidence that was discovered.

## STATEMENT OF THE CASE

### A. CONTRACT HISTORY

Plaintiff-Appellee is a Citizen of Vietnam (Ex. 6, page 2) and has no resident status in the United States. In fact, Plaintiff-Appellee is in Immigration removal proceedings before the U.S. Immigration Court for illegal entry, marriage fraud and immigration fraud. Plaintiff-Appellee is awaiting deportation and could be

deported at any time. Three of the parties' children are all Indonesian nationals by birth. The parties' home is in Indonesia and they have never lived in Alaska or the United States.

The parties entered into a marriage contract on August 28, 2014 under Indonesian Law in Bali, Indonesia. (Ex. 6) That agreement contained a clear provision that **"any and all disputes"** to be settled by binding arbitration before a religious tribunal in Indonesia. (Ex. 6, page 3) The parties traveled to Alaska for temporary summer employment in 2016 and then again in 2017 as part of their Indonesian church employment. Plaintiff-Appellee ultimately held the parties' children as hostages in an attempt to force Defendant-Appellant to get her a green card making a plan to set Defendant-appellant up with her immigration scam. (Ex. 50) and a (recorded face time call) When that didn't work Plaintiff-Appellee began abusing the children (Ex. 51) as she had previously threatened to do if Defendant-Appellant didn't comply with her demands to go along with her immigration scam for a green card. (Ex. 1, 2, 4, 15A, 51) The parties' home is still in Indonesia and neither party has a permanent home in Alaska, where they have been forced to stay in Alaska because of Plaintiff-Appellee's forced litigation and COVID-19 issues.

Defendant-Appellant first obtained a copy (not government verified) of the parties' signed contract from Indonesia in October 2019 and was deposed by

Plaintiff-Appellee at length about the parties' contract prior to the forced litigation. (Ex. 1)

Plaintiff-Appellee stated in her memorandum in support of her motion to stay the International Indonesian arbitration that was plead to the Palmer Superior Court that,

> "… Ms. Green, having agreed to marry Defendant-Appellant, was told she was signing their wedding vows **when she signed the second page of the agreement.**" (Ex. 19, page 6)

Page two of the parties' contract clearly calls **for binding arbitration of "any and all disputes"**. There is no real dispute as to the fact that the contract was signed and executed in Indonesia, under Indonesian law that contained three arbitration clauses. (Ex. 6)

## B. PLEADING THE PARTIES' CONTRACT

Defendant-Appellant pled the parties' unverified contact to the Palmer Court September 17, 2019, September 22, 2019, and on January 21, 2019, and on January 30, 2020 so the court could be advised that the parties already had an international contract with dispute resolution by binding arbitration. The Palmar Superior Court never heard or ruled on any of Defendant-Appellant's motions, simply ignoring them for almost 12 months now. The court has either held the pending motions in abeyance or simple has ignored the Defendant-Appellant's repeated pleadings.

Plaintiff-Appellee, in her pleading to the Palmer Court dated May 5, 2020, argued that,

> "… such a one sided agreement would never be enforced in any court of law since it is unconscionable.", and
> **"The total windfall … in the alleged agreement in light of setting, purpose, and effect, is unconscionable."** (Ex. 19, page 10)

Defendant-Appellant first filed his motion to amend his pleadings based on newly discovered evidence on March 18, 2020. (Ex. 8)

After a three months delay Judge Woodman issued an order on June 22, 2020 denying Defendant-Appellant's request to amend his pleadings, stating that the denial was without prejudice and that Defendant-Appellant should first submit his proposed amendments and then Judge Woodman would decide if he would allow the amend the pleadings to be filed. (Ex. 30) Defendant-Appellant did submit his second motion to amended pleadings on July 28, 2020 (Ex. 37) and Judge Woodman has completely refused to accept and rule for nearly 2 months now. The actions by Judge Woodman have caused the delay of time and has severely prejudiced Defendant-Appellant in this matter. (Ex. 41)

The Defendant-Appellant has been trying get "permission" to amend his pleadings for 9 months, (Ex. 8, 37, 25 41) Judge Woodman has intentionally moved to block Defendant-Appellant's efforts to amend the pleadings to conform to the newly discovered evidence, which is the parties' contract and the arbitrator's

appointment which was received from Indonesia on March 16, 2020, (Ex. 6) and the subsequent corrected awards that followed from the International Indonesian Foreign Arbitration on April 16, 2020 and May 17, 2020. (Ex. 3, 5)

## C. INTERNATIONAL INDONESIAN ARBITRATION AND AWARD

Defendant-Appellant did not plead arbitration and award in his initial answer and counter claim because he did not even remember what agreement the parties had made, nor did the Defendant-Appellant have a copy of the parties' contract. Defendant-Appellant had not seen the contract in over 5 years and didn't know what it said or where to find a copy of the contract in Indonesian while being stuck in Alaska because the Plaintiff-Appellee had held the children as hostages for a green card. (Ex. 51) as part of her green card and immigration fraud scam. The parties did negotiate the terms of the contract through hone, text and email. (Ex. 2, 4)

The Arbitrator's appointment arrived from Indonesia in Bahasa and English on March 16, 2020. (Ex. 6) The notice of the Arbitrator's appointment was filed with the court on March 28, 2020. (Ex. 12) The Defendant-Appellant made the demand for arbitration, (Ex. 9, 10) the arbitrator accepted his appointment and set the arbitration schedule (Ex. 11) and the parties preceded with the International Indonesian arbitration.

Plaintiff-Appellee did not move the Palmer Superior Court to stay the active International Indonesian arbitration proceedings until May 5, 2020, 18 days after the deadline for her opposition to be filed and 20 days after receiving the Arbitrator's Partial Final Award dated April 16, 2020. (Ex. 3) And after 2 more scheduled hearings, which the Plaintiff-Appellee failed to attend in the arbitration. The Arbitrator finally issued his (default) Final Award on All Issues on May 17, 2020. (Ex. 5)

Judge Woodman denied the Defendant-Appellant his right to file his opposition to the Plaintiff-Appellee's motion to stay an active ongoing International Indonesian Arbitration and then issued an order denying the motion to compel arbitration (Ex. 26, 27) and granting a motion to stay the arbitration on May 19, 2020, (Ex. 23) after the International Indonesian Foreign arbitration was completely finished, (Ex. 5, 31) with no reasons stated in the court's order. Defendant-Appellant filed a motion for reconsideration (Ex. 26) and Judge Woodman denied the motion for reconsideration on June 22, 2020 claiming waiver and citing specific statutes that do not apply to the parties' contract. Further the Judge mis-quoted case law in his new order. (Ex. 36) Judge Woodman failed to address how the Alaska Superior Court claimed jurisdiction over the Government of Indonesian in an international contract calling for arbitration of "any and all disputes" under Indonesian law.

The Alaska Superior Court does not have statutory or jurisdictional authority to stay an International Indonesian Foreign Arbitration conducted under foreign laws that apply to a foreign contract with a binding arbitration clause.

**D. THE COURT'S ERROR FINDING THAT AN INTERNATIONAL INDONESIAN FOREIGN ARBITRATOR'S AWARD IS "NULL AND VOID"**

On August 24, 2020 Judge Woodman issued his "Trial Setting Notice" (Ex. 43) in this case detailing pretrial deadlines including witness lists, discovery deadlines, expert reports, exhibit exchanges and trial briefs. Prior to this "trial order" the Defendant-Appellant had been participating in defending his position/seeking interim/preliminary orders and seeking dismissal of the case for lack of subject matter jurisdiction. Judge Woodman is attempting to force re-litigation of issues already adjudicated without statutory authority and in clear violation of United States Supreme Court rulings and other relevant case law.

Judge Woodman did hold a hearing on September 2, 2020 regarding Defendant-Appellant's motion to dismiss with prejudice for lack of subject matter jurisdiction of the Palmer Court action. (Ex. 42, 44) Plaintiff-Appellee did not oppose the motion to dismiss with prejudice, did not file a trial brief to support her position, and gave no evidence at the hearing, but rather relied on Judge Woodman's clear bias he has shown in this case several times. (Ex. 49) The Palmer Superior Court has denied Defendant-Appellant his statutory right to file

13

oppositions and replies six times in that case. (Ex. 49) At the September 2, 2020 hearing Judge Woodman made oral findings that he was declaring that the International Indonesian Foreign Arbitration Award was "null and void" because the Defendant-Appellant did not have his [Judge Woodman's] "permission" to arbitrate (Detailed in Addendum #2) despite the parties' contractual rights in Indonesian which is the contract's governing law. (Detailed in Addendum #3)

Judge Woodman's finding that the arbitrator's awards are "null and void" is in direct contradiction to the Alaska Uniform Revised Arbitration Act, the Federal Arbitration Act, the Recognition and Enforcement of Foreign Arbitral Awards otherwise known as the New York Convention 1958 and numerous case law citing's that Defendant-Appellant presented to the Palmer Superior Court in his pleadings. (Ex. 14, 44) Judge Woodman's findings are in direct contradiction to Indonesian law of arbitration. (Detailed in Addendum #3) Judge Woodman's findings are in direct conflict with the Acts of State Doctrine. (Detailed in Addendum #1)

Could this be an abuse of discretion of power?

## E. WAIVER DURING INTERIM/PRELIMINARY MOTIONS HEARINGS

The Palmer Superior Court's finding of waiver did not come until after the International Indonesian Foreign arbitration was completely finished and the final award had already been issued. This erroneous finding came 279 days after

Defendant-Appellant first pled the parties' rough draft of the contract, which is all Defendant-Appellant had at the time, on September 17, 2019, which Judge Woodman completely ignored while changing the "ripe" date to make the Defendant-Appellant's pleading mute and somehow force jurisdiction in his court. The Defendant-Appellant received from Indonesia the appointment of the arbitrator and the attached signed government contract on March 16, 2020. (Ex. 6) The Defendant-Appellant filed the notice the arbitrator had been appointed in Indonesia (Ex. 12) and his demand for arbitration (Ex. 10) within 2 weeks from receiving the appointment and contract. (Ex. 6)

The Palmer Superior Court has denied Defendant-Appellant his statutory right to file oppositions and replies six times in that case. (Ex. 49) This memorandum spells out the multiple violations of law that Judge Woodman has committed during the pendency of this case.

Could this be an abuse of discretion of power?

## F. MOTION TO AMEND THE PLEADINGS AND MOTION'S TO DISMISS

The Defendant-Appellant on March 18, 2020 moved to amend his pleadings with the newly discovered evidence (Ex. 8) and pled both Arbitration and Award and pled for the dismissal of the action for lack of subject matter jurisdiction on July 28, 2020 (Ex. 37) in his second motion to Amend the pleadings. On July 28, 2020 the Defendant-Appellant pled arbitration and award in his motion and

memorandum to dismiss with prejudice. (Ex. 37, 38) On August 14, 2020. the Defendant-Appellant in his motion to renew his motion to dismiss with prejudice. On August 14, 2020. the Defendant-Appellant in his motion for the court to stop interfering with the arbitration and award. (Ex. 41) On August 24, 2020 the Defendant-Appellant in his notice to the court that the two above motions were ripe and that the court had not ruled on them for 124 days. (Ex. 41) Judge Woodman had refused to rule on the Defendant-Appellant's motions forcing the Defendant-Appellant into re-litigating the matters already fully adjudicated in this matter. On August 28, 2020 the Defendant-Appellant in his notice to the court that the above referenced motions had not yet been ruled on the Defendant-Appellant as forced to file a demand for a hearing on the matter to finally get the court to rule on his motions.

Could this be another abuse of discretion of power?

Arbitration awards are enforceable when there is no appeal available for the parties to contest the award. This is an International Foreign Arbitration not subject to the US Courts review.

## SUMMARY OF THE ARGUMENT

The Alaska State Supreme Court has no subject matter jurisdiction over an International Indonesian Foreign Arbitration agreement. It has no subject matter jurisdiction over an arbitration or the arbitrator's award arising out of a contact for

16

arbitration from another country. The United States Supreme Court has clearly ruled that International foreign arbitration agreements are not to be litigated in the US Courts; this is forum shopping. *(Schrek v Alberto)* and *(9 U.S. Code § 203)* US District Courts have original jurisdiction over the confirmation of international foreign arbitration awards. US treaties and laws limit the courts involvement in a foreign arbitration and arbitration awards falling under the New York Convention 1958. The court's jurisdiction is limited to confirmation, which is a summary proceeding, and refusal to confirm an award can only be obtained when one of the six defenses is successfully raised. The Plaintiff-Appellee has never raised any defense to the confirmation of either of the awards the Arbitrator has issued. The Acts of State Doctrine (Addendum #1) bars the US Courts from interfering with the acts of foreign governments and transnational arbitration tribunals.

## ARGUMENT

### I.  THE CONTRACT FALLS UNDER THE NEW YORK CONVENTION 1958

The Parties contract falls under the convention is many ways. The contract has commercial property included in it and also provides for the acquisition of additional property in Vietnam. (Ex. 6)

The Indonesian property is commercial property and is used as a hostel for travelers and for other commercial activities. The parties also engage in

international import and export within four countries, the United States, Vietnam, Indonesia and Canada. The parties still have commercial interests in Indonesia with products waiting shipment to the United States and there is $90,000.00 of gold nuggets in Vietnam being made into jewelry for import to the United States. (Ex. 5) All of which are transactions involving international and interstate commerce.

The parties also own property in three countries, Vietnam, Indonesia and the United States. (Ex. 5) (9 U.S. Code § 202).

The parties' contract and their current actions clearly fall under the convention for the recognition and enforcement of foreign arbitral awards. Plaintiff-Appellee's filing in the Palmer Superior Court is nothing more than international forum shopping and The United States Supreme Court has clearly held in _Scherk v Alberto-Culver Co 417 US 506 (1974)_ that international forum shopping in violation of an international agreement to arbitrate is against our national public policy and should not be permitted in any courts in the United States.

The United States Supreme Court held that;

> "The United States is the signatory to the New York convention and has an **"emphatic federal policy in favor of arbitral dispute resolution"** _Mitsubishi Motors Corporation. V. Soler Chrysler Plymouth, Inc. 63 U.S. 614, 631 (1985); see also ESAB Grp. Inc. V. Zurich Ins. PLC, 685 F. 3d 376, 390 (4th Cir. 2012)._ **In the context of foreign arbitral awards, this policy includes "concerns of international comity, respect for the capacities of foreign and transnational tribunals…."** _Mitsubishi motors, 63 U.S. at 629._

*In United States District Court Case No. 18-11192 the Judge cited;*

> **"United States District Court would have jurisdiction** *should this case relate to an arbitration agreement or award "falling under" the New York convention. It is undisputed that the action to confirm the award "relates to" the award; the question is whether the award "falls under" the convention.* **And "an arbitral award arising out of a legal relationship" falls under the convention if that "relationship involves property located abroad, envisions performance or enforcement abroad,** *or has some other reasonable relation with one or more foreign states."*

> *"a reviewing court examining whether arbitrators exceeded their powers* **must resolve all disputes in favor of arbitration"** <u>Rain CH Carbon, LLC v. Conoco Phillips Co., 674 F 3d. 469, 62 (5th Cir 2012)</u>

> **"Courts are to enforce the New York convention.**"

Arbitration of custody is protected under the constitution and The Supreme Court of New Jersey in <u>*Fawzy v. Fawzy 199 N.J. 456 (N.J. 2009)*</u> held that,

> *"within the constitutional protected sphere of parental autonomy is* **the right of parents to choose the forum in which their disputes over child custody and rearing will be resolved including arbitration."**

In the case of *Albano* t*he United States Supreme Court held,

> *"when parties voluntarily agree to arbitrate,* **they waive access to the court,** *and* **any decision rendered will be binding and subject to review only under limited circumstances,** *as described infra."*

### A. THE AWARD IS RES JUDICATA

The Acts of State Doctrine (Addendum #1), The Indonesian courts recognize and have a strong policy favoring the arbitration, in a religious court, of any contracted issue. The

parties' contract was negotiated, (Ex. 1, 2, 4) executed and filed as a government document in Indonesia with enforcement under Indonesian Law. (Ex. 3, 6) The Arbitrator was appointed (Ex. 6) and acted under Indonesian Law and the arbitration was conducted under International and Indonesian Law. (Ex. 11) (see addendum #2). The arbitration secretary as is required by law is located in Indonesian.

The California Appellant Court in *Dial 800 v. Fesbinder 118 Cal. App. 4th 32 (Cal. Ct. App. 2004)* has addressed the issue of religious arbitration agreed to in a foreign country and the court and held;

> "First, the sua sponte order dismissing Plaintiff-Appellee's interpleader action must be reversed because the **trial judge erroneously ruled that the private contractual agreement among parties to arbitrate their dispute before a religious tribunal in Israel deprived the Los Angeles Superior Court of subject matter jurisdiction.**"

The court went on further to state;

> "...there is no indication that an award, whether rendered by a secular or religious tribunal in Israel, could not have been reduced to a judgement enforceable in California. **As a general matter, an arbitration award is the equivalent of a final judgement which renders all factual and legal matters in the award res judicata.**"

In United States Court of Appeals, Ninth Circuit *G.C. and K.B. Investments, Inc. v. Wilson 326 F.3d 1096 (9th Cir. 2003)* the court held;

> "Under the rubric of **either jurisdiction or res judicata**, the crux of the question is whether there **has already been actual consideration of and a decision on the issue** presented. "

20

No. S-14891 Supreme Court of Alaska in _McAlpine v. Priddle 321 P.3d 345_

_(Alaska 2014)_ the court held,

> "The court concluded, however, that the **[arbitration] panel's finding that the document was not fraudulent was not reviewable [by the courts].** "

_Reynolds v. Lomas_ (pro enforcement of foreign awards)

_Russell v. United States_ (operating a rental is commerce)

_COLORADO RIVER WATER CONS. DIST. v. US_ (US court cannot abstain from jurisdiction when it has jurisdiction by statute)

_Polimaster Ltd. v. RAE Systems, Inc, 623 F.3d 832_ (Award must be confirmand unless a proper defense is raised)

## B. THE COURT ERRED IN NOT DISMISSING THE STATE COURT ACTION FOR LACK OF SUBJECT MATTER JURISDICTION.

The parties contract clearly states;

"This agreement shall be subject to the Laws of God and the Holy Ordinances as found in the Holy Bible and general interpretations of the Presbyterian Faith and **any and all disputes shall be subject to exclusive and binding arbitration** to/by Jeffrey H. Klett and/or his successors and assignees. **Both parties agree that any decision(s) by the arbitrator are absolutely binding and that a court of competent jurisdiction shall uphold any decision rendered by the arbitrator.**" (Ex. 6)

"**This agreement shall be binding in Indonesia, Vietnam and the United States of America or any other Country or State that Richard L Green shall reside in.** This agreement cannot be modified unless signed by Richard

Lee Green and Dinh Hoang Phuong and the arbitrator as appointed in this agreement." (Ex. 6)

In Preston v. Ferrer, 552 U.S. 346 (2008) the United States Supreme Court held,

> "When parties agree to arbitrate **all questions** arising under a contract, the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, **supersedes state laws lodging primary jurisdiction in another forum,** whether judicial or administrative. Pp. 4–16."

The parties' broad arbitration clause, "any and all disputes", would cover all questions of arbitrability, pre-conditions before demand for arbitration is made, procedures in arbitration and defenses like waiver and unconscionability. There are effectively no questions that are before the court.

The Palmer Superior Court has no subject matter jurisdiction in this matter.

Defendant-Appellant seeks to have this court uphold the parties' International Indonesian Foreign Arbitration and the Arbitrator's Partial Final Award on Jurisdiction and Enforceability dated April 16, 2020 and corrected on April 24, 2020 (Ex. 3) and The Arbitrator's Final Award on All Issues dated May 17, 2020 and corrected on July 5, 2020. (Ex. 5) Defendant-Appellant filed his motion to amend and to dismiss for lack of subject matter jurisdiction in the Palmer Superior Court. (Ex. 8, 37) and the Court violated the Defendant-Appellant's right's protected under the *New York Convention 1958.*

The Palmer Superior Court made findings on September 2, 2020 that the arbitrator's awards were "null and void" (addendum #2) is in direct contradiction

to the _Convention._ The parties must have enforcement of these awards in at least three countries, the parties have property in Indonesia, Vietnam and the US.

### 9   _U.S. Code § 202_

_An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, ... **including a transaction, contract**, ... **falls under the Convention**. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that **relationship involves property located abroad, envisages performance or enforcement abroad**, or has some other reasonable relation with one or more foreign states._

The Defendant-Appellant pled to the Palmer Superior Court that original jurisdiction lies with the US District Court and not the Palmer Superior Court. The Palmer Superior Court disagreed.  (Ex. 46)

### 9 U.S. Code § 203

_An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... **shall have original jurisdiction** over such an action or proceeding, regardless of the amount in controversy._

The convention clearly shows that an award shall be confirmed unless one of the six enumerable defenses is presented successfully by the Plaintiff-Appellee. The Plaintiff-Appellee has never raised any of the required defenses to the enforcement and Defendant-Appellant's request to uphold the Arbitral awards. The Defendant-Appellant asks for the US District Court to confirm the awards as required by the Convention. The Plaintiff-Appellee did not file any opposition to

the Defendant-Appellant's July 28, 2020 Motion to Dismiss with Prejudice, the August 14, 2020 Cross Motions to renew Defendant-Appellant's motion to dismiss for lack of subject matter jurisdiction, and the August 14, 2020 Cross Motion for the court to stop interfering with the International Indonesian Foreign Arbitration Award or the Defendants-Appellant's trial brief. (Ex. 44)

### *9 U.S. Code § 207*

*Within three years after an arbitral award falling under the Convention is made, … **The court shall confirm the award** unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.*

On August 24, 2020 the Palmer Superior Court issued a Trial Scheduling Notice with pre-trial deadlines for discovery, exhibits and witness lists, etc. (Ex. 43) The Defendant-Appellant has never presented his case or evidence for any interim/preliminary orders. Trial current is set for November 2,3,4, 2020.

### *9 U.S. Code § 205.Removal of cases from State courts*

*Where the subject matter of an action or proceeding pending in a State court relates to an **arbitration agreement or award falling under the Convention**, the Defendant-Appellant or the Defendant-Appellants may, at any time before the trial thereof, **remove such action or proceeding to the district court of the United States** for the district and division embracing the place where the action or proceeding is pending.*

In *Carter v. Carter Coal Co. U.S. 238 (1936) 298* the court held that,

*"As used in the commerce clause of the Constitution, the term "commerce" is the equivalent of intercourse for the purposes of trade, and includes transportation, purchase, sale and exchange of commodities between citizens of the different States. **The power to regulate commerce embraces the instruments by which commerce is carried on**. P. 297. 15."*

The Palmer Superior Court made oral findings (these can be found in Addendum #3) on September 2, 2020 that the arbitrator's awards were "null and void" and these findings are in direct contradiction to *The Federal Arbitration Act.*

**9 U.S. Code § 2** in pertinent part states,

*"A written provision in any maritime transaction or a contract evidencing a transaction ..., **or an agreement in writing to submit to arbitration** an existing controversy arising out of such a contract, transaction, or refusal**, shall be valid, irrevocable, and enforceable,** save upon such grounds as exist at law or in equity for the revocation of any contract."*

**9 U.S. Code § 4** in pertinent part states,

*"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which ... Five days' notice in writing of such application shall be served upon the party in default. ... The court shall hear the parties, and **upon being satisfied that the making of the agreement for arbitration** or the failure to comply therewith is not in issue, the court shall make an **order directing the parties to proceed to arbitration** in accordance with the terms of the agreement. ... the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."*

**9 U.S. Code § 9** in pertinent part states,

*"If the parties in their agreement have agreed ... **the court must grant such an order unless the award is vacated, modified, or corrected** as prescribed in sections __10__ and __11__ of this title. If no court is specified in the agreement of the parties, **then such application may be made to the United States court in and for the district within which such award was made** ... "*

The Palmer Superior Court erred in declaring a International Indonesian foreign Arbitration and the arbitrator's award "null and void" for two reasons. One, the Palmer Superior Court has no subject matter jurisdiction over foreign government and arbitral tribunals acts in those foreign jurisdictions.

> ***"In the context of foreign arbitral awards,** this policy includes "concerns of international comity, **respect for the capacities of foreign and transnational tribunals....**" Mitsubishi motors, 63 U.S. at 629.*

The Palmer Superior Court made findings on September 2, 2020 that the arbitrator's awards were "null and void" is in direct contradiction to the __Alaska Uniform Revised Arbitration Act__.

### __AS 09.43.300. Application.__

**(a)** *"AS __09.43.300__ - __09.43.595__ govern an agreement to arbitrate made **on or after January 1, 2005.**"*

### __AS 09.43.340. Application to Compel Arbitration; Stay of Related Proceedings.__

***"(a)** On application of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate under the agreement,*
***(1)** if the refusing party does not appear or does not oppose the application, **the court shall order the parties to arbitrate**; and*
***(2)** if the refusing party opposes the application, the court shall proceed summarily to decide the issue **and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.**"*

There is no statutory provision for the Palmer Superior Court to stay an ongoing International foreign arbitral proceeding. In fact, the arbitration was completely finished prior to the Palmer Superior Court's order to stay arbitration.

### AS 09.43.490. Confirmation of Award.

*"After a party to an arbitration proceeding receives notice of an award, the party may apply to the court for an order confirming the award, at which time **the court shall issue a confirming order** unless the award is modified or corrected under AS 09.43.60 or 09.43.510 or is vacated under AS 09.43.500 ."*

The Plaintiff-Appellee did not file any opposition to the Defendant-Appellant motion for dismissal. (Ex. 44) The Plaintiff-Appellee did not object to the award, which was issued April 16, 2020. (Ex. 3) The Plaintiff-Appellee did not object to the award, which was issued May 17, 2020. (Ex. 5) In fact, the Plaintiff-Appellee has never filed a motion to vacate either of the arbitrator's awards in this case.

### AS 09.43.500. Vacating Award.

*"**(b)** An application under this section **shall be filed within 90 days** after the applicant receives notice of the award under AS 09.43.460 or within 90 days after the applicant receives notice of a modified or corrected award under AS 09.43.60 , ... ."*

The deadline to file for vacatur has passed both in Indonesia and in the United States and the Plaintiff has no legal standing to contest either awards at this time.

The ***Acts of State Doctrine,*** The Indonesian courts recognize the arbitration with a religious tribunal for any contract and the Arbitrator was appointed and acted under Indonesian Law and the arbitration was conducted under Indonesian Law. (see addendum #2)

### C. THE COURT ERRED AND ABUSED ITS DISCRETION OF POWER IN SETTING ASIDE OR RENDERING THE INTERNATIONAL INDONESIAN FOREIGN ARBITRATOR'S AWARD, "NULL AND VOID"

On August 24, 2020 Judge Woodman issued the "Trial Setting Notice" (Ex. 43) in this case detailing pretrial deadlines including witness lists, discovery deadlines, expert reports, exhibit exchanges and trial briefs. Prior to this order the Defendant-Appellant had been participating in defending his position in interim/preliminary matters and seeking dismissal of the case for lack of subject matter jurisdiction. Except a brief part of the hearing on July 22, 2020 when Judge Woodman threatened to issue a default order if Defendant-Appellant did not participate in the forced re-litigation of the issues already resolved by binding arbitration, the parties' agreed and contracted for in Indonesia. (Ex. 6)

Only after the Defendant-Appellant pled 5 motions to dismiss and only after the Defendant-Appellant was forced to file demanding an immediate hearing be set Judge Woodman did finally hold a hearing n the motions. (Ex. 42, 44) Until that time the Court simply ignored the pleadings and on September 2, 2020 the Palmer

Superior Court finally scheduled a 30-minute hearing on the issue of dismissal, lack of subject matter jurisdiction. (Ex. 42)

Plaintiff-Appellee's did not file any opposition to the arbitral award and multiple motions to dismiss with prejudice clearly showing the court that the Plaintiff-Appellee has accepted the Arbitrator's awards in this matter. Plaintiff-Appellee raises no defense to the Arbitrator's award. (Ex. 44)

Plaintiff-Appellee did not oppose the motion to dismiss with prejudice but rather relied on Judge Woodman's clear bias. At the September 2, 2020 hearing Judge Woodman made oral findings found in (Addendum #2) and referenced within this appeal.

This is the only time Judge Woodman has really addressed the International Indonesian Foreign Arbitrator's Award that was issued prior to his order dated May 19, 2020 staying an Indonesian International arbitration proceeding however,

The Palmer Superior Court's finding of "null and void" came 351 days after Defendant-Appellant first pled the parties rough draft of the contract, which is all he had at the time, on September 17, 2019. Defendant-Appellant did not even know if the rough draft was the same as the final draft since him and Plaintiff-Appellee had negotiated some changes (Ex. 2) before executing the contract in Indonesia under Indonesian law and the Defendant-Appellant had not seen the agreement since that day and he didn't even remember the agreement until

reminded of its existence in late August 2019 during a call with Indonesian Church officials.

The Palmer Superior Court's finding of "null and void" came 169 days after the arbitrator had been appointed from Indonesia on March 17, 2020 (Ex. 6, 12) and 350 days after Defendant-Appellant presented the contract rough draft to the court.

The Palmer Superior Court's finding that the Arbitration was "null and void" came some 138 days after the arbitrator had issued the Partial Final Award on Jurisdiction and Enforceability on April 16, 2020, (Ex. 3) and

The Palmer Superior Court's finding of "null and void" came 108 days after the arbitrator had issued the Final Award on All Issues on May 17, 2020. (Ex. 5)

Judge Woodman's finding that the arbitrator's awards are "null and void" is in direct contradiction to the Alaska Uniform Revised Arbitration Act, the Federal Arbitration Act, the Recognition and Enforcement of Foreign Arbitral Awards 1958 otherwise known as the New York Convention 1958 and ignoring the numerous case law citing's that Defendant-Appellant presented to the Palmer Superior Court in his pleadings.

Could this be yet another abuse of discretion of power?

*In United States District Court Case #8:18-cv-03546-PWG the Court further held;*

**"United States courts have secondary jurisdiction over a foreign award, so they may not vacate, set aside, or modify the award,** but are limited to deciding whether the award may be enforced. <u>Kakhri v. Marriot Int'l Hotels, Inc. 201 F. Supp. 3d 696, 710-11 (D Md. 2016).</u>

<u>"In Figueiredo Ferraz, the Second Circuit cited American Dredging Co. v.</u>

<u>Miller, 510 U.S. 443, 453 (1994) the court held,</u>

"and could be contemplated under the New York convention's provisions that says that **states shall ("recognize arbitration awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon."** <u>665 F. 3d at 392</u>...") ("the procedure provision of the treaties permit variation with regard to the manner in which signatory states enforced international arbitration awards, **they do not provide a means by which a state may decline to enforce such awards at all.")**

<u>In United States Court of Appeals, Ninth Circuit G.C. and K.B. Investments,</u>

<u>Inc. v. Wilson 326 F.3d 1096 (9th Cir. 2003) Decided Apr 23, 2003</u> the court held;

**"Under the rubric of either jurisdiction or res judicata, the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. "**

<u>No. S-14891 Supreme Court of Alaska. McAlpine v. Priddle 321 P.3d 345</u>

<u>(Alaska 2014) Decided Feb 21, 2014</u> the court held,

"The court concluded, however, that the [arbitration] panel's finding that the document was not fraudulent **was not reviewable [by the courts].** "

The Acts of State Doctrine, The Indonesian courts recognize the arbitration of religious tribunal for any contract and the Arbitrator was appointed and acted under Indonesian Law and the arbitration was conducted under Indonesian Law. (see addendum #2)

## D. PLAINTIFF-APPELLEE HAS LOST THE ABILITY TO VACATE, SET ASIDE OR DECLARATION OF "NULL AND VOID" OF THE ARBITRATOR'S AWARD

Under Indonesian Law the time to contest the Arbitrator's award has passed.

Plaintiff-Appellee's actions are now barred by **9 U.S. Code § 12** from vacating the Arbitrator's awards.

> **_9 U.S. Code § 12_**.
>
> "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

_D.H. v. Gottdiener, 462 F.3d 95_ | _(confirmation is summary in nature and burden of proof is on the Defendant-Appellant)._

_Ass'n of Flight Attendants v. Rep. Airlines, 797 F.2d 352_ _(failure to vacate in time period waives ability to contest the award for confirmation)._

_Service Emp. Intern. Union v. Office Ctr, 670 F.2d 404_ | _(DEFAULT AWARD) (defense not raised in the 90 days is waiver to the defense) (a defense to vacate should be raised immediately and not during confirmation)_

_Booth v. Hume Publishing, Inc, 902 F.2d 925_ | _holding that a defense other than to vacate or modify is not allowed under the FAA_

32

_Caribbean Trading v. Nigerian Nat. Petroleum, 948 F.2d 111_ (cannot raise a defense in second pleading)

The Palmer Superior Court erred in looking at its own erroneous ruling when judging the validity of an International Indonesian Award. The court is limited to the four corners of the award in making its ruling on the award. In _Wenmar v. Ecosmatre Planet Friendly No. A08-1973 (Minn. Ct. App. 2009)_ the court held,

> _"To provide the relief requested by appellant, **we would first have to look outside the "four corners" of the arbitration award** in order to ascertain the applicable legal rule regarding set-offs for inventory sold, and then apply that rule to the facts of this case. We would, **in effect, be second-guessing the arbitrator's legal determinations.** This is a step that long-established **precedent prevents us from taking.**"_

## II.    UNCONSCIONABILITY OF A CONTRACT AS A WHOLE IS FOR THE ARBITRATOR TO DECIDE NOT THE COURT

In support of Plaintiff-Appellee's motion to stay the ongoing International Indonesian Foreign arbitration the Plaintiff-Appellee alleges,

> "Such a one-sided agreement would never be enforced in any court of law since it is unconscionable. The determination that a contract…is or is not unconscionable made in light of process, purpose, and effect."

> "The total windfall bestowed on Mr. Green in the alleged agreement in light of setting, purpose, and effect is unconscionable." (Ex 19, page 12)

_In Nagrampa v. Mailcoups, Inc. 469 F.3d 1257 (9th Cir. 2006)_ the court held,

> _"We review this case en banc to clarify, as the Supreme Court has recently reiterated, that when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, **then**_

**the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator**. *See Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006); Prima Paint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967).*

In *RENT-A-CENTER, WEST, INC., v. JACKSON.561 U.S. 63* the court held,

> *"Under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the district court considers the challenge, but **if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator**. Pp. 2776-2781."*

> *"(a) Section 2 of the FAA places arbitration agreements on an equal footing with other contracts, Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L.Ed.2d 1038, and requires courts to enforce them according to their terms, Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 68, 109 S. Ct. 1248, 103 L.Ed.2d 488, "save upon such grounds as exist at law or in equity for the revocation of any contract," § 2. Here, the Agreement included two relevant arbitration provisions: **It provided for arbitration of all disputes** arising out of Jackson's employment, including discrimination claims, and it gave the "Arbitrator... exclusive authority to resolve any dispute relating to the [Agreement's] enforceability... including ... any claim that all or any part of this Agreement is void or voidable." Rent-A-Center seeks enforcement of the second provision, **which delegates to the arbitrator the "gateway" question of enforceability**. See, e.g., Howsam v. Dean Witter Reynolds, Inc.,537 U.S. 79, 83-85, 123 S.Ct. 588, 154 L.Ed.2d 491. The court must enforce the delegation provision under §§ 3 and 4 unless it is unenforceable under § 2. Pp. 2776-2778."*

When the Plaintiff-Appellee **challenges the entire agreement as a whole** as being unconscionable then **the entire matter must be referred to the Arbitrator**

34

**to decide including the arbitration clause and any allegations of waiver.** The parties' broad arbitration clause states, "any and all disputes" would render any dispute over unconscionability to the arbitrator, not the courts.

## III. THE QUESTION OF ARBITRALITY IS FOR THE ARBITRATOR NOT THE COURT

In support of her motion to stay an ongoing arbitration the Plaintiff-Appellee alleges that the issues of custody and property are not arbitrable. Plaintiff-Appellee argues;

> "Such a one-sided agreement would never be enforced in any court of law since it is unconscionable."

The determination that a contract...

> "is or is not unconscionable made in light of process, purpose, and effect", "The total windfall bestowed on Mr. Green in the alleged agreement in light of setting, purpose, and effect is unconscionable." (Ex 19, page 15)

Plaintiff-Appellee uses in her memorandum in support of staying arbitration, but in this instance, we would bring one piece of case law to the court's attention.

*In Nagrampa v. Mailcoups, Inc. 469 F.3d 1257 (9th Cir. 2006)* the 9th Circuit Court of Appeals held;

> **"as the Supreme Court has recently reiterated, that when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator."** The court further held; "when the crux of the complaint is not

35

*the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 USC 2 of the FAA."*

When Plaintiff-Appellee attacks the entire agreement, not the arbitration clause, then the entire matter must be referred to the arbitrator and not for the court to decide the matter.

Plaintiff-Appellee further claims she never saw the first page of the parties' contract until the proceeding's in this case. This court needs to review Defendant-Appellant's motion for reconsideration and the exhibit X-7a, pages 11 at section V. titled: **CURRENT LIES OF PLAINTIFF-APPELLEE** and review through page 14 and the referenced exhibits. This will clearly show that Plaintiff-Appellee was deceiving the Palmer Superior Court about the 2-page contract she signed which included property, alimony and custody issues. The parties negotiations can be found in (Ex. 1, 2, 4)

Plaintiff-Appellee in her pleading states;

**"when she (Plaintiff-Appellee) signed the second page of the agreement."**

Plaintiff-Appellee clearly admits that the agreement was in fact 2 pages when she signed it.

Defendant-Appellant would refer this court to page 22 of Exhibit X-7a in support of the motion for reconsideration in the section titled arbitration, section D for the full argument. (Ex. 26, 27, 29)

36

## IV. ARBITRATION

### A. THE COURT ERRED IN DENYING TO COMPEL ARBITRATION

**(EX. 37)**

The Plaintiff-Appellee in clear violation of her contractual obligation to binding arbitration in Indonesian under Indonesian Law for a contract negotiated, executed and filed with the Indonesian government filed in the Palmer Superior Court seeking litigation in a different forum then the one she is bound to. (Ex. 6)

The Defendant-Appellee within 2 weeks after gaining the government approval and documents filed in the Palmer Superior Court the notice of appointment (Ex. 12) and subsequently made his demand for arbitration (Ex. 9, 10) as required under both Indonesian and US laws. The intent was to arbitrate both litigations/disputes at the same time, since the underlying issues are so intricately intertwined. (Ex. 9, 10)

Although the Plaintiff-Appellee at first refused to arbitrate as required by the Indonesian contract she signed in 2014, (Ex. 6) the Plaintiff-Appellee did make an appearance through counsel (Ex. 17) and sought an extension of time in the arbitration proceedings that was granted by the arbitrator. (Ex. 19)

The Indonesian laws are very specific and when a party fails to appear at two scheduled hearings the arbitrator s bound by law to issue a default order in the matter. (Ex. 21)

Law No. 30 of 1999
Arbitration and Alternative Dispute Resolutions

Article 44

1. If on the day determined, ... the respondent, for no valid reason, fails to appear, although the respondent has been duly summoned, the arbitrator or arbitration panel must immediately summons the respondent again.

2. If within 10 (ten) days after the respondent receives the second summons, the respondent, for no valid reason, still fails to appear at the hearing, the proceedings will be continued without the respondent, and the claimant's claim will be entirely accepted, unless the claim is groundless or is not based on law.

(additional Indonesian Arbitration laws that are applicable can be found in

ADDENDUM #2)

**SUMMARY**

The International Indonesian Arbitration is complete (Ex. 31) and represents a final non appealable adjudication of all of the parties' disputes subject to binding arbitration of the parties' August 28, 2014 Indonesian contract. (Ex. 6) Neither the Indonesian courts nor the US Courts have statutory authority to re-litigate these same disputes.

The Defendant-Appellant incorporates the arguments referring to the Acts of State Doctrine (Addendum #1) in the next section into his argument for this section as well.

The Palmer Superior Court's refusal to compel arbitration of the Alaska case, which is nothing more than Plaintiff-Appellee's international forum shopping filed

in violation of Indonesian law and the parties' August 28, 2014 contract does not affect the arbitration proceedings from an arbitration conducted in Indonesia under Indonesian law. The arbitration secretary is located in Indonesia and the venue for arbitration is in Indonesia.

## B. THE COURT ERRED IN STAYING AN ACTIVE ONGOING INTERNATIONAL INDONESIAN FOREIGN ARBITRATION PROCEDING

First and foremost, the standard the court should consider is the Acts of State Doctrine. (Addendum #1) Under this principle the United States Courts should not interfere, set aside, cast away, ignore or make findings of "null and void" what a foreign government has already done. The article, in pertinent part, states as follows,

> **"It is well established that courts in United States will refrain from examining the validity of acts of foreign governments where those acts take effect within the territory of the foreign State.** This rule, commonly known as the Act of State doctrine, has been stated and discussed by the U.S. Supreme Court in various cases. The Act of State doctrine says that a nation is sovereign within its own borders, and **its domestic actions may not be questioned in the courts of another nation**. The doctrine is not required by international law, but it is **a principle recognized and adhered to by United States federal courts**. Its aim is not to protect other nations' sovereignty by intervention from the U.S.",

> "Every sovereign State is bound to respect the independence of every other sovereign State, and **the courts of one country will not sit in judgment on the acts of the government of another…**"

In *Underhill v. Hernandez* strongly indicates that,

"the doctrine had its origins in notions of sovereign equality and was based on the view that **international law-imposed limits on the ability of States to exercise jurisdiction over other States.**

In *Sabbatino*, the court held that,

"If a transaction takes place in one jurisdiction and the forum is in another, the court merely declines to adjudicate or makes applicable its own law to parties or property before it. The refusal of one country to enforce the penal laws of another is a typical example of an instance when a court will not entertain a cause of action arising in another jurisdiction.

The court further held that,

**"the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government,**

In *Kirkpatrick*, the Court reconfirmed that,

"Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them." To the extent that a case involves the "official act of a foreign sovereign," the Act of State doctrine applies only when a U.S. court must declare such official act "invalid, and thus ineffective as a rule of decision for the courts of this country.""

"This is the principle that the validity of an act is to be determined by the law of the territory where the act took place. **Thus, acts of the sovereign, or acts of state, done within the sovereign's own territory, are legally valid everywhere."**

Under the Act of State doctrine, **the courts of one State will not question the validity of public acts performed by other sovereigns** within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts.

Under this section passed in 1988, **enforcement of arbitral agreements, confirmation of arbitral awards, and execution upon judgements based on order confirming such awards shall not be refused** on the basis of the Act of State doctrine.

40

The doctrine represents deference to the superior exercise of jurisdiction by the territorial State and **prevents the U.S. from unlawfully extending its jurisdiction** to situations and acts authoritatively determined by the territorial State. **As such, the doctrine represents an acknowledgment that the US does not possess the legal competence to reverse the acts of foreign sovereigns carried out abroad.**

Based on the foregoing, the Palmer Superior Court erred in interfering in the arbitration proceedings of Indonesia adjudicating a contract for binding arbitration that was formed and is adjudicated under Indonesian law. The Palmer Superior Court has no authority to stay an Indonesian Foreign arbitration. **9 U.S. Code § 206.**

"A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement."

Further the court erred in declaring to set aside or declare an arbitration or arbitration award of Indonesia as "null and void". To allow this abuse of discretion of power is to interfere with the official acts of the Indonesia government and render its laws and policies of no effect.

United States Courts have no subject matter jurisdiction or jurisdictional authority to interfere with a foreign governments laws and proceedings to enforce or adjudicate a contract solely negotiated and executed under their laws and in their country.

41

## V.    THE COURT ERRED IN DENYING TO AMEND THE PLEADINGS

Then Judge Woodman failed to mention in his reconsideration order that the Defendant-Appellant also filed a motion to amend his pleadings to conform to the new evidence (Ex. 8) that was received from Indonesia March 17, 2020. The court has also delayed that motion for several months before finally issuing ruling (this is addressed below) and then eventually denied Defendant-Appellant's motion to amend his pleadings based in the new evidence. (Ex. 8) The court then instructed Defendant-Appellant to first file his amended pleadings and then Judge Woodman would decide if he was willing to accept the amended pleading and the new evidence. (Ex. 30) This is not within the intent of the Civil Rules of Procedure in Alaska, and is inconsistent with case law and customary practice of the courts across the United States of America.

This is improper at best, since Judge Woodman already knows what the amended pleadings would include and just caused more delay, the very same delay the court uses in its order staying arbitration, which he has no legislative authority to do.

Judge Woodman appears to be an unjust judge who seeks control and power when he knows he has no subject matter jurisdiction in this case.

All of the delays in this case were caused by the court not the Defendant-Appellant. The Court and Plaintiff-Appellee both know what the amended pleading

would include, since the parties' contact had been pled to the court several times by the Defendant-Appellant. The court simply delayed the Defendant-Appellant from amending his pleadings and in doing so delayed the Defendant-Appellant for over 13 months now the court still delays the Defendant-Appellant's pleadings. (Ex. 41)

The Defendant-Appellant pled both Arbitration and Award and pled for the dismissal of the action for lack of subject matter jurisdiction on July 28, 2020 in his motion to Amend the pleadings. (Ex. 37) The Palmer Superior Court has refused to rule on the amended pleadings in this matter trying to force the Defendant-Appellant into forced re-litigation of exactly the same issues already adjudicated by the Indonesian government so Judge Woodman can try and hold onto subject matter jurisdiction he does not have.

Could this be yet another abuse of discretion of power?

## VI.    THE COURT ERRED IN FINDING WAIVER

### a.  Alleged waiver in the Palmer Superior Court

The Palmer Superior Court fails to understand or acknowledge that the New York Convention 1958 does not have any provision for the court to deny arbitration or stay an International Arbitration in progress and there is no provision for waiver. Any finding of waiver must be from the contracting country which is Indonesia. **9 U.S. Code Title 9—ARBITRATION**

1. CHAPTER 2—CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS (§§ 201 – 208)

Judge Woodman's order is broken into two points. The first issue is when did the Defendant-Appellant had an actual known right to arbitrate. The second issue is alleged waiver based on failure to pled arbitration and award and alleged prejudice. The issue the Palmer Superior Court turned a blind eye to is the fact that under Indonesian Law there is no provision for waiver. The Palmer Superior Court turned a blind eye to the fact that waiver is a gateway for arbitration and for the arbitrator not the court.

The court record and pleadings will clearly show that Judge Woodman is picking and choosing what he wants to use to justify trying to keep subject matter jurisdiction and does not rely on the facts in the record. Judge Woodman also ignores the contracts governing laws and process related to contacts and arbitration, that is Indonesian law.

### b. The Indonesian Process

Once the signed copy was found in Indonesia then Defendant-Appellant was advised by Indonesian counsel that is was required by law to have the contract verified with the Ministry of Marriage and the Civil Registry **before** proceeding to seek arbitration and ask for the arbitrator to be appointed. This process was not completed in Indonesia until February, 2020.

44

In late February 2020 Defendant-Appellant received a call from Indonesia stating that the contract had been verified by both witnesses and was now legalized, and fully enforceable.

The court cannot find waiver in this case because a known right cannot be obtained until after the Defendant-Appellant received the Indonesian Governments verified copy of the parties' contract on March 16, 2020 and the Arbitrator is appointed. (Ex. 6)

The party appointed arbitrator, who was appointed in the contract, was re-assigned by succession to Mr. Dalem. He did not feel comfortable acting as the arbitrator since his English is so poor and it would be more meaningful to the parties for an English-speaking Pastor to handle the arbitration. Mr. Dalem assigned the arbitrator as required under Indonesian law. The assignment and appointment of Pastor Timothy Sizemore was received by Defendant-Appellant via DHL on March 16, 2020. (Ex. 6).

Waiver cannot be obtained because Defendant-Appellant's right to arbitration under Indonesian law does not began until after the arbitrator is appointed, seated and ready to act. The Defendant-Appellant filed his demand for arbitration within 2 weeks after the arbitrator's appointment and receiving the government verified contract so there can be no finding of waiver.

### c. Indonesian Law does not provide for waiver of the contracted right of arbitration

Indonesia law, the law that the parties' contract was executed under and still is the governing law over the parties' contract does not allow for waiver of the contracted right to arbitration.

*Law No. 30 of 1999 Arbitration and Alternative Dispute Resolutions states:*
*Article 3*

> *The District Court has no jurisdiction to try disputes between parties bound by an arbitration agreement.*

*Article 4*

> 1. *If the parties have agreed that disputes between them are to be resolved through arbitration and have granted such authority, the arbitrators have the authority to determine in their award the rights and obligations of the parties, if these matters are not stipulated in their agreement.*
> 2. *The agreement to resolve disputes through arbitration as specified in paragraph (1) must be contained in a document signed by the parties.*

*Article 11*

> 1. *The existence of a written arbitration agreement eliminates the right of the parties to submit the resolution of the dispute or difference of opinion contained in the agreement to the District Court.*
> 2. *The District Court must refuse to and must not interfere in any dispute settlement which has been determined by arbitration, except in particular cases determined in this Law.*

In actual fact, the court would not interfere with an written agreement to arbitrate. The courts are banned from hearing or intervening in the mater when the parties agree to binding arbitration.

Judge Woodman's argument completely fails under the International and Indonesian governing law that the parties' contract is subject to. Judge Woodman's argument also fails in applying The Acts of State Doctrine. The Indonesian courts recognize the arbitration of religious tribunal for any contract and the Arbitrator was appointed and acted under Indonesian Law and the arbitration was conducted under Indonesian Law. (see addendum #2 for the pertinent Arbitration law)

### d. What is waiver in the United States?

It is the "intentional" aspect of waiver that sets it apart from terms such as laches, forfeiture, or contractual default, in that waiver represents not just "losing" the right to arbitrate but, in fact, voluntarily giving up and renouncing that right.

*In **United States v. Olano** 507 U.S. 725 (1993) • 113 S. Ct. 1770 Decided Apr 26, 1993. The United States Supreme Court held;*

> ***"waiver is the "intentional relinquishment or abandonment of a known right."*** *Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see, e.g., Freytag v. Commissioner, 501 U.S. 868, 894 n. 2 (1991*

The right was not known to the Defendant-Appellant until the contract was verified and on March 16, 2020 when the arbitrator was appointed in Indonesia.

47

You cannot waive what you don't have or what you don't know about. Judge Woodman's finding of waive in the order dated June 22, 2020 (Ex. 36) was based on inaccurate and incomplete citing's of the record, inaccurate use of the Alaskan Statutes related to arbitration, mis-citing case law, in direct contradiction to the Alaska Uniform Revised Arbitration Act, the Federal Arbitration Act, the Recognition and Enforcement of Foreign Arbitral Awards otherwise known as the New York Convention 1958, and ignored the numerous case law citing's that the Defendant-Appellant presented to the Palmer Superior Court in his pleadings. This finding was over one month after the International Indonesian Foreign arbitration had been completed. This 'order' is an attempt to interfere with an Indonesian contract and the sovereign acts of the Indonesian government and a transnational tribunal in enforcement of that contract.

The Palmer Superior Court's finding of waiver came 279 days after Defendant-Appellant first pled the parties rough draft of the contract on September 17, 2019 (Ex 7) (which the court ignored and held in abeyance). Defendant-Appellant did not even know if the rough draft was the same as the final draft since the Defendant-Appellant and Plaintiff-Appellee has negotiated some changes before executing the contract in Indonesia and the Defendant-Appellant didn't even remember the parties' contract until reminded of its existence in late August 2019 and Defendant-Appellant had not seen the agreement since that day. If the court

will look at the documented evidence from 2014, the first rough draft is between

Loan Hoang and Richard Green because the Defendant-Appellant didn't even

know the Plaintiff-Appellee's real name until August 15, 2014. (Ex.56)

The Palmer Superior Court's finding of waiver came 67 days after the arbitrator

had issued the Partial Final Award on jurisdiction and Enforceability on April 16,

2020. (Ex. 3)

The Palmer Superior Court's finding of waiver came 36 days after the arbitrator

had issued the Final Award on All Issues on May 17, 2020. (Ex. 5)

The Palmer Superior Court cannot find waiver of an international agreement to

arbitrate governed under Indonesian law.

In actual fact the United States Supreme Court ruled that international contracts

with arbitration agreements should never be heard in the US courts. (Schrek v

Alberto)

Waiver is a precondition or gateway to demanding arbitration and is not for the

courts to decide it is properly before the Arbitrator.

In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, the

Supreme Court attempted to refocus and put into context Congress's intent in

enacting the FAA, which was to promote the enforcement of arbitration

agreements.

The Supreme Court affirmed the court of appeals' decision. In doing so, the Court focused on

"Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.

The Court found that the district court's stay of arbitration "frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements."

Most importantly, the Court acknowledged in *Moses* that the FAA "requires a liberal reading of arbitration agreements"; "and that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

**Specifically, the US Supreme Court held that the FAA,**

> **"establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or alike defense to arbitrability."**

This holding- along with the specific language of "waiver, delay, or a like defense" was later used by the *Howsam* Court.

In *Howsam v. Dean Witter Reynolds, Inc.,* Karen Howsam alleged that her financial advisor, Dean Witter, misrepresented the virtues of a partnership that the firm had recommended she purchase. Dean Witter filed suit in court, asking "the court to declare that the dispute was 'ineligible for arbitration' because it was more than six years old." Additionally, Dean Witter sought an injunction that would "prohibit Howsam from proceeding in arbitration." The district court dismissed the action "on the ground that the NASD arbitrator, not the court, should interpret and

apply the NASD rule." The Court of Appeals for the Tenth Circuit reversed, finding that the "application of the NASD rule presented a question of the underlying dispute's 'arbitrability'; and the presumption is that a court, not an arbitrator, will ordinarily decide an 'arbitrability' question."

The Supreme Court granted certiorari to resolve the issue of "whether a court or an arbitrator primarily should interpret and apply this particular NASD rule." The Court reversed the judgment of the Tenth Circuit, holding that the NASD rule was for an arbitrator to interpret and apply.

> **"In its opinion, the Supreme Court established a framework for courts to use in determining which gateway questions such as waiver were for the courts to decide and which were reserved for arbitrators.** The Court understood that "linguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits." The Court, however, found that not all gateway disputes are "questions of arbitrability," which a court should decide and that the phrase itself "has a far more limited scope."

In reviewing its own case law, the Court found the phrase "question of arbitrability" applicable in the kind of narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Thus, focusing on party expectations, the Court distinguished between questions of arbitrability for a court to decide and those gateway questions more appropriately left to the arbitrator. The Court defined questions of arbitrability as questions pertaining to the existence of a binding arbitration agreement and questions as to whether an issue is within the scope of an existing agreement. Conversely, gateway questions that were not "questions of arbitrability," and thus were not to be decided by courts, related to **"general circumstance[s] where**

51

parties would likely expect that an arbitrator would decide the gateway matter."

Specifically, "**procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide**" Thus, the Court divided gateway questions into two broad categories: (1) substantive questions, which are the "questions of arbitrability" for judges to decide-such as the existence and scope of an arbitration agreement; and (2) procedural questions, which are for arbitrators to decide.

In reaching its decision, the Court looked to the Revised Uniform Arbitration Act of 2000 ("RUAA"), which provided that **"an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled."**

The Court quoted comment 2 of the RUAA, which mandated **"issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."**

Moreover, in seeking to clarify which gateway questions were for courts and which were for arbitrators to decide, the Court focused on the expectation's parties have when accepting an arbitration agreement.

**Furthermore, the Court concluded that an ... arbitrator would be better at interpreting and applying the agency's own rule than a court.**

In the matter before this court is the issues of arbitrability including waiver, time limits, notice, and other conditions (demand, procedure, when a demand can be made). These are procedural questions for the arbitrator or the courts. The courts are limited to determining whether an issue in included in the arbitration clause. In this case the arbitration clause is very broad, "any and all disputes" and must include the dispute of waiver. This gateway issue of waiver is a procedural decision and can only be properly determined by the religious tribunal in Indonesia under Indonesian law.

52

To alleviate the tension between judicial resolution and the arbitration process, Congress enacted the Federal Arbitration Act ("FAA") in 1925.

"The FAA was intended to overcome the jealousy of the "...courts for their own jurisdiction." *See* Smith, *supra* note 16, at 130 (quoting *Morse,* 87 U.S. at 451).

In this case Judge Woodman clearly states on the record that his idea is that this is a jurisdictional issue and he will not accept the International Indonesian Arbitration Award since it would cause him to lose subject matter jurisdiction. (Addendum #2) The courts findings and orders are merely an attempt to hold on to jurisdiction and violate the parties' Indonesian contractual rights.

Could this be yet another abuse of discretion of power?

### e. participation in arbitration proceedings invalidates claim of waiver

The Plaintiff-Appellee did not file her motion to stay arbitration until May 5, 2020 after participating in arbitration to see what the arbitrator would award in the partial final award on jurisdiction and enforceability. Only then, unhappy with the arbitrator's award, did Plaintiff-Appellee file to stay the Indonesian arbitration proceedings.

In *Klosterman v. Choice Hotels International, Inc. United States District Court, D. Idaho May 18, 2005 Case No. CIV-05-076-E-BLW* held that,

*"It should be noted that **Klosterman did not raise any objection to arbitration up to the point where he filed his response to Choice's demand**, nor thereafter until the day before the arbitration hearing was to commence. Thus, **although Klosterman did not participate in an arbitration hearing "on the merits"** like Cady, he still participated in arbitration proceedings for over a year. **Klosterman's participation is analogous to conduct that the Idaho Supreme Court found to constitute waiver** in <u>Hansen v. State Farm Mut. Auto. Ins. Co.</u>"*

### f. Waiver cannot be obtained under the law

The Defendant-Appellant knew that pleading or demanding arbitration was futile when all he had was the rough draft of an unsigned contract. Defendant-Appellant still plead the parties rough draft to advise the court of its existence. The Defendant-Appellant then pled the parties' contract 4 other times reminding the court that some of the claims were arbitral while he waited for the Indonesian government to verify the parties' contract and the arbitrator to be appointed, a prerequisite to demanding arbitration in the contracts governing law. Pleading Arbitration prior to the contract's verification and the Arbitrator's appointment, which arrived from Indonesia at the same time, would be futile at best since the issues were so inextricably intertwined and could not be severable at that stage.

In <u>Belke v. Merrill Lynch, Pierce, Fenner 693 F.2d 1023 (11th Cir. 1982)</u> the court held,

"The district court denied appellant's motion for arbitration and a stay, holding that Merrill Lynch waived its right to arbitration by not raising the issue at the commencement of the litigation. Acknowledging that arbitration might have been impossible at the outset if arbitrable and non-arbitrable claims were "inextricably intertwined," the district court declined to discuss the "technicalities" of impossibility, or to determine whether severance would have been impossible in the case before it. Rather, the court stated that "[t]he correct thing for defendant to have done was to preserve its right to arbitrate early in the suit . . . . It is not for the litigant to decide that had an earlier motion to arbitrate been made it would surely have been denied and thus was a futile gesture."

"Merrill Lynch appeals this denial of arbitration, arguing it did not waive arbitration as its request for arbitration was timely made. **It is appellant's position that the law does not require the "futile gesture" of filing for arbitration before claims become arbitrable, and that delay in filing should be measured from the time of arbitrability. We agree."**

The district court recognized that delay alone is insufficient to constitute waiver, but found attendant prejudice resulting from appellant's invocation of the discovery mechanism prior to the motion for partial summary judgment. Because we hold there was not delay on the part of Merrill Lynch in filing for arbitration, we need not address the issue of prejudice. There was no delay, therefore there could be no prejudice.

The Palmer Superior Court wrongly asserts that it is for the court to decide if the procedural requirements are in place for the demand for arbitration. The Palmer Superior Court further wrongly asserts that it is for the court to decide when actual knowledge of a right to Arbitrate, when the demand is required and waiver are for the court to decide. All of these are procedural preconditions to arbitration and properly before the Arbitrator not the court.

*In BG Grp. PLC v. Republic of Argentina 572 U.S. 25(2014)* the court held,

*1. A court of the United States, in reviewing an arbitration award made under the Treaty, should interpret and apply "threshold" provisions concerning arbitration using the framework developed for interpreting similar provisions in ordinary contracts. Under that framework, **the local litigation requirement is a matter for 1202arbitrators primarily to interpret and apply.** \*1202 Courts should review their interpretation with deference. Pp. \_\_\_ - \_\_\_, 188 L. Ed. 2d, at 227-234.*

*(a) Were the Treaty an ordinary contract, it would call for arbitrators primarily to interpret and to apply the 4 local litigation provision. In an ordinary contract, the parties determine whether \*4 **a particular matter is primarily for arbitrators or for courts to decide.** See, e.g., Steelworkers v. Warrior & Gulf Nav. Co., 363 U. S. 574, 582, 80 S. Ct. 136, 4 L. Ed. 2d 1409. If the contract is silent on the matter of who is to decide a "threshold" question about arbitration, courts determine the parties' intent using presumptions. That is, courts presume that the parties intended courts to decide disputes about "arbitrability," e.g., Howsam v. Dean Witter Reynolds, Inc., 537 U. S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491, and **arbitrators to decide disputes about the meaning and application of procedural preconditions for the use of arbitration,** see id., at 86, 123 S, Ct. 588, 154 L. Ed. 2d 491, **including, e.g., claims of "waiver, delay, or a like defense to arbitrability,"** Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U. S. 1, 25, 103 S. Ct. 927, 74 L. Ed. 2d 765, and the satisfaction of, e.g., " 'time limits, notice, laches, [or] estoppel,' " Howsam, 537 U. S., at 85, 123 S. Ct 588, 154 224 L. \*224 Ed. 2d 491. **The provision at issue is of the procedural variety.** As its text and structure make clear, **it determines when the contractual duty to arbitrate arises, not whether there is a contractual duty to arbitrate at all.** Neither its language nor other language in Article 8 gives substantive weight to the local court's 5 determinations on the \*5 matters at issue between the parties. **The litigation provision is thus a claim- processing rule. It is analogous to other procedural provisions found to be for arbitrators primarily to interpret and apply,** see, e.g.,ibid., and there is nothing in Article 8 or the Treaty to overcome the ordinary assumption. Pp. \_\_\_ - \_\_\_, 188 L. Ed. 2d, at 228-230.*

### a. Waiver by failure to plead arbitration and award

The Plaintiff-Appellee asserts waiver in her pleading cross-motion to stay arbitration filed on May 5, 2020. (Ex 19) In support of her motion to stay an ongoing arbitration the Plaintiff-Appellee alleges,

> "First Defendant-Appellant waived his right to demand arbitration by failing to raise this as an affirmative defense…", (page 1)

> "Mr. Green first waived his right to arbitrate when he failed to assert arbitration as an affirmative defense in his answer as required by Alaska R. Civ. Pro. 8(c)." (page 10),

Waiver cannot be obtained in this rule because it clearly calls for **arbitration and award**. AND is a conjunctive word that requires both the arbitration and award to be present to plead as an affirmative defense.

The Alaska Supreme Court ruled in _Blood v. Kenneth Murray Insurance 68 P.3d 1251 (Alaska 2003)_ holding that;

> _"In Teamsters, we held that the Defendant-Appellant had waived its right to demand arbitration by failing to plead an affirmative defense of arbitration as required by Alaska Rule of Civil Procedure 8(c),[9] by availing itself of discovery procedures which were probably unavailable under arbitration, and by delaying for over three years in raising the issue of arbitration."[10]_

> 9. [9] _Alaska Civil Rule 8(c)_ provides: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . arbitration and award . . . ."
> 10.[10] _572 P.2d at 1174._

> _"The superior court read Teamsters to require Blood to plead arbitration in his complaint or waive that remedy. In Teamsters we interpreted Rule 8(c) to require a Defendant-Appellant seeking arbitration to raise that remedy as a defense in its answer if it did not want to waive its right.[11] But more recently,_

*we explained in <u>Loyal Order of Moose v. International Fidelity Insurance Co</u>.*
***that "a demand for arbitration [is not] equivalent to the 1255affirmative***
***defense `arbitration and award.' "[12] \*1255***

11.[11] *Id. at 1173.*
12.[12] *797 P.2d 622, 629 n. 16 (Alaska 1990); see also Victor v. State Farm*
    *Fire Cas. Co., 795 F. Supp. 300, 304 n. 6 (D. Alaska 1992) (observing that*
    *identical Federal Rule of Civil Procedure 8(c)* **"is limited to the situation**
    **where a dispute has already been arbitrated and an award has been**
    **obtained, not to situations where arbitration has not yet taken place").**

*"The superior court cited Hillman for the same principle as Teamsters. In*
*Hillman, we held that the Defendant-Appellant insurance company did not*
*waive its right to arbitrate the uninsured motorists claim.* ***We ruled that a***
***Plaintiff-Appellee who initiates litigation in violation of an arbitration clause***
***cannot later claim waiver by the Defendant-Appellant."[13]***

Based on the clear ruling of the Alaska Supreme Court the Plaintiff-Appellee

cannot later claim waiver when they initiate litigation in violation of an arbitration

clause. The appeal before this court is exactly that, the Plaintiff-Appellee simply

filed for litigation in violation of her clear agreement to binding arbitration and

thus cannot later claim waiver of that same right.

[13] *758 P.2d at 1253.*

> *"The superior court in the present case did not explain why it thought*
> *Hillman supported its conclusion. Possibly it reasoned that if the insureds in*
> *Hillman could not claim waiver of arbitration by the defense because the*
> *Plaintiff-Appellees knowingly initiated litigation in violation of the*
> *arbitration clause, then Blood, the insured in this case, could not oppose*
> *waiver when he did the same thing. But claiming and opposing waiver raise*
> *distinct issues. The insureds in Hillman* ***could not claim waiver because***
> ***they had suffered no prejudice****; whether Blood can successfully oppose a*
> *claim that he waived arbitration turns largely on whether his actions in*

*pursuing his lawsuit unequivocally indicated a purpose to abandon his right to arbitrate."[14]*

See <u>Wausau Ins. Cos. v. Van Biene, 86 P.2d 584, 588 (Alaska 1993).</u>

*"The holdings in Teamsters and **Hillman did not require Blood to plead arbitration in his complaint** or be deemed to have forever waived that remedy. "*

In this present case the Defendant-Appellant has been trying to amend his pleadings to include the parties' contact and arbitration and award for months (this is discussed in the following section) and the Palmer Superior Court has vigorously and intentionally blocked the Defendant-Appellant's efforts to amend the pleadings based on the new evidence in the case.

In <u>NUCLEAR INSTALLATION, ETC. v. Nuclear Services, 468 F. Supp. 1187 (E.D. Pa. 1979)</u> stated,

> *"As this court explained in <u>Vespe Contracting Co. v. Anyan Corp., 399 F. Supp. 516 (E.D.Pa.1975)</u>: "Waiver of the right to arbitration is not to be lightly inferred. Unless **one's conduct has gained him an undue advantage or resulted in prejudice to another, he should not be held to have relinquished the right.** The mere filing of a complaint or answer, without resultant prejudice to the objecting party, **will not justify a finding of waiver.***
>
> *Id., at 522 (citations omitted). In the instant case, NISCO took part in the California **litigation primarily in a defensive stance**. NISCO properly challenged the personal jurisdiction of the court and we find that such a challenge does not constitute a knowing waiver. <u>See Necchi Sewing Machine Sales Corp. v. Carl, supra, 260 F. Supp. at 668</u>. Similarly, **we find that the***

59

***attempt to assert arbitration rights does not constitute a knowing
relinquishment of arbitration rights***, *see* <u>Network Cinema Corp. v.
Glassburn, 357 F. Supp. 169, 171 (S.D.N.Y. 1973),</u> *and that NISCO's **filing
of a counter-claim is merely an attempt to protect its position**. <u>See Carcich
v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir. 1968).</u> "*

The Palmer Superior Court has acted in clear violation of the rules of the
court and in the interest of justice in this matter. The Plaintiff-Appellee has acted in
clear violation of her obligation to binding arbitration. The Defendant-Appellant
has defended his position, sought preliminary orders and plead the parties' contact
and arbitration and award continuously in this case when the evidence was finally
sent from Indonesian.

### b. Waiver through discovery

In support of her motion to stay an ongoing arbitration the Plaintiff-Appellee
alleges,

"access to discovery not attainable though arbitration can also waive the
right to arbitration." (Ex 19, page 11),

Plaintiff-Appellee makes no valid claim of any discovery that was obtained by
the Defendant-Appellant that was not available in arbitration, in fact the
Defendant-Appellant made no discovery request of the plaintiff prior to the
arbitrator's appointment and the demand for arbitration was issued during the
interim/preliminary proceedings.

As of March 17, 2020, when the arbitrator was seated and ready to act there had been no discovery instigated by either party except one deposition Plaintiff-Appellee held deposing the Defendant-Appellant about the parties' contract and arbitration and the exchanging of some discovery exhibits, Plaintiff-Appellee had only provided the Defendant-Appellant with approx. 20 documents in all. All of this "discovery" would be available through binding arbitration as the parties had contracted for.

The Palmer Superior Court issued its first pre-trial order on August 24, 2020 which gives the discovery, exhibit and trial brief deadlines.

The Plaintiff-Appellee's argument fails again since there was virtually no discovery obtained and the Plaintiff-Appellee is the one who initiated discovery that was primarily about the parties' contract, all of that discovery would be available to the parties in arbitration.

The Defendant-Appellant filed his answer in April, 2019 with the information he had available at the time. At the time Defendant-Appellant did not even remember signing a marriage contract. Just 2 weeks later the Defendant-Appellant, under doctors' orders, was placed in strict isolation with three toddlers and a baby until July 27, 2019 and was unable to go anywhere or do anything. Defendant-Appellant was 250 miles from the Alaska property where his hard drives were stored. The Defendant-Appellant's domicile and family home are located in

Indonesia some 5,000 miles away and had no access to his legal documents. In late August 2019 the Defendant-Appellant was reminded by Church officials in Indonesia that all missionaries must have a marriage contract when they marry a foreigner. The Defendant-Appellant wanted the court to be aware of the document while he waited for the folks in Indonesia to search to find a signed copy of the contract so he could see what the parties actually agreed to before he could present the verified government document to the Palmer Superior Court.

On October 1, 2020 Plaintiff-Appellee deposed the Defendant-Appellant and those facts were established on the record. Plaintiff-Appellee had full knowledge of the contract and the required arbitration before a religious tribunal of "any and all disputes" in Indonesian and simply made a calculated decision to try and force litigation in violation of the international contact that calls for arbitration. The Defendant-Appellant could not plead arbitration and award with a "supposed contract' or a "unsigned rough draft" because the court would have laughed the Defendant-Appellant right out of court and ignored the pleading anyway.

Defendant-Appellant timely filed to the Palmer Superior Court immediately upon learning of the contact and did again file the parties' contract on September 17, 2019, September 2020, January 21, 2020, and then again on January 30, 2020. Judge Woodman simply did nothing expecting if he ignored the parties' contract it

would go away, or Judge Woodman never actually read any of the Defendant-Appellant's pleadings.

In March, 2019 Plaintiff-Appellee filed a new motion asking the court to hold all of the Defendant-Appellant's motions in abeyance, so she could finish her entire interim case before the court dealt with the parties' contractual relationship and agreements for custody and property as Defendant-Appellant had filed the contract for the court's action. The court granted her request to hold ALL OF THE DEFENDANT'S MOTIONS IN ABEYANCE against the opposition of Defendant-Appellant.

The morning of March 17, 2020 the Defendant-Appellant was able to have his Alaska counsel look at the agreement and the arbitrator's appointment and then determine what his rights were and what to do next.

Now the question is not about arbitration but rather about how that right relates to the case at hand and when that right was known and when it could be pled to the court and what the Defendant-Appellant can seek for the court prior to the arbitrator's appointment and the arbitrator being seated and ready to act.

Under Alaska Law the Defendant-Appellant has the right to seek interim/preliminary orders until the arbitrator was appointed and ready to act.

*AS 09.43.350. Provisional Remedies.*

***Before an arbitrator is appointed and is authorized and able to act, the court, upon application** of a party to an arbitration proceeding and for good cause shown, **may enter an order for provisional remedies** to protect*

*the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action.*

On March 27, 2020 the Defendant-Appellant, through counsel, immediately notified the court of the arbitrator's appointment he had just received and proceeded to issue the demand for arbitration as required by law.

There can be no finding of waiver when the Defendant-Appellant is forced to defend a suit filed against him and wait until the newly discovered evidence can be obtained and verified as a government document and in the case of an Indonesian arbitration the Defendant-Appellant cannot demand arbitration until the arbitrator has been appointed and is ready to act. The Defendant-Appellant made the demand for arbitration within 2-weeks of receiving the verified contract and appointment of the arbitrator from Indonesia.

### c. Prejudice

In the Plaintiff-Appellee's pleadings she claims prejudice but states no factual basis for the court to find prejudice. The Plaintiff-Appellee motion states,

"Here, Ms. Green would be severely prejudiced. Not only has she presented her case in chief, but she has had to respond to copious motions." (Ex. 19, page 12)

"Such a one-sided agreement would never be enforced in any court of law since it is unconscionable. The determination that a contract…is or is not unconscionable made in light of process, purpose, and effect." "The total windfall bestowed on Mr. Green in the alleged agreement in light of setting, purpose, and effect is unconscionable." (Ex. 19, page 12)

This is the basis for the second point found in Judge Woodman's statement on page 6, second to last sentence from the bottom when Judge Woodman states; "it would prejudice Plaintiff-Appellee to now compel arbitration." (Ex. 36) Defendant-Appellant has already dealt at length that there is no prejudice to Plaintiff-Appellee as the court claims, and worse yet Plaintiff-Appellee's actions are in violation of her responsibilities under the law. In addition, the threshold of prejudice is not a matter of stating or claiming it, it is a matter that must be proven by the standards set out by the Supreme Court of the United States and other case law.

Plaintiff-Appellee fails to establish any basis for prejudice in her pleadings before the Palmer Court. The Plaintiff-Appellee only suffers from her own self-inflicted wounds.

Judge Woodman cites case law improperly to justify his finding of waiver; Judge Woodman cites:

In *Martin v. Yasuda United States Court of Appeals, Ninth Circuit. Jul 21, 2016 829 F.3d 1118 (9th Cir. 2016) held;*

> *"The court held that prejudice must establish three elements based on federal case law;* **To prove prejudice, [Plaintiff-Appellee] must show more than "self-inflicted" wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement.***" Fisher , 791 F.2d at 698 ; see also Richards , 744 F.3d at 1074–75. "In contrast, in order to establish prejudice, [**Plaintiff-Appellee**] must show that, as a result of **Defendant-Appellant's having delayed seeking arbitration, they have incurred**

***costs that they would not have otherwise incurred,*** *see Van Ness Townhouses , 862 F.2d at 759,*

First, the Defendant-Appellant did not delay. Plaintiff-Appellee has incurred no costs in her forced litigation (Plaintiff-Appellee is receiving volunteer no-cost legal services) and any of her self-inflicted wounds are exactly that, completely self-inflicted by her unclean hands in forced litigation in violation of her international contracted agreement to arbitrate "any and all disputes".

The Defendant-Appellant had not started his litigation or admitted even one exhibit until the court forced the Defendant-Appellant on July 22, 2020 under Judge Woodman's direct threat of issuing an immediate finding of default. The Defendant-Appellant's sole participation in the litigation was to preserve his rights under the law and seek interim/preliminary matters until the arbitrator was seated and ready to act.

The claim of waiver is further addressed in the Defendant-Appellant's pleadings and case law found in the arbitration section in the Defendant-Appellant's pleading.

The Plaintiff-Appellee actually never argued waiver and never provided the court with any real evidence of waiver or prejudice in this case.

In *Yasuda the 9th Circuit Court* establishes a three-prong test to determine waiver. Plaintiff-Appellee has never alleged any of the three elements required to

claim waiver. Furthermore, in the *Martin v Yasuda* case they were **18 months into the litigation** and **during a court pre-trial conference the Superior Court Judge specifically asked if Yusada, the Defendant-Appellant, if their intent was to proceed with trial on the merits or did, they intend to invoke the arbitration clause.** At that pre-trial conference Yusada responded they had not decided on the issue of arbitration. **Then that court further instructed Yusada that they would need to make that decision within a few weeks because proceeding past then would create a waiver of the right to arbitration.** When Judge Woodman cites this case, it is so far removed from our case the 9th circuit's ruling cannot be applied to the Palmer Case because the elements in the Yusada proceedings are so far removed and different.

Judge Woodman never held a pre-trial conference. He refused to acknowledge the Defendant-Appellant's pleadings of the parties' contract. Judge Woodman never advised the Defendant-Appellant of his right to seek arbitration. Judge Woodman issued the pre-trial notice with pre-trial deadlines on August 22, 2020 which is 11 months after the Defendant-Appellant first pled the parties' contract to the court and 6 months after the notice of the arbitrator's appointment was pled to the court and 3 months after the Indonesian Arbitration was completed and the final award was issued. Judge Woodman never counseled Defendant-Appellant in open court of his options of arbitration v. litigation, the Defendant-Appellant had

no actual knowledge of his right to arbitration in this matter until the arbitrator was appointed out of Indonesia the contracting country and he received the appointment and verified government contract via DHL on March 17, 2020. (Ex. 6) Under Indonesia rules you cannot demand arbitration until after the arbitrator has been appointed. In fact, Judge Woodman refused to even talk about the contract provided by the Defendant-Appellant by blocking all of his pleadings about the parties' contract since September 2019.

Plaintiff-Appellee included the parties' contract in her exhibit list and filed it with the court in October 2019. Judge Woodman did nothing to advise the Defendant-Appellant of his rights to arbitration vs litigation.

Defendant-Appellant has been denied his right to due process, as guaranteed under the United States Constitution and the United States Treaties in the proceedings before Judge Woodman. For additional abuses of power during this "forced litigation please see the Defendant-Appellant's memorandum. (Ex. 48, 49)

In addition to that Judge Woodman fails to recognize that a contract negotiated, formed, executed and filed with a foreign government, under Indonesian law places exclusive jurisdiction in that country's arbitration system and the US Supreme Court in _Scherk v Alberto_ stops the Plaintiff-Appellee from international forum shopping. The only place this contract can be adjudicated is in Indonesia under Indonesian law. The Alaska Superior Court cannot gain subject matter

jurisdiction of an International Indonesian Foreign Contract when the patties agree to binding arbitration in that country under their laws.

In *NUCLEAR INSTALLATION, ETC. v. Nuclear Services, 468 F. Supp. 1187 (E.D. Pa. 1979),*

> *"NSC argues that it was prejudiced by the passage of time and by the costs of opposing NISCO's motions. The Court's response is two-fold. First, **NSC initiated the California action in violation of its contractual agreement. It cannot properly claim that it was prejudiced by NISCO's challenge to the jurisdiction of the court.**"*

### g. Plaintiff-Appellee's unclean hands

Plaintiff-Appellee moved the court to hold all of Defendant-Appellant's pleadings in abeyance when the Court ordered it would address the issues at the next hearing. Judge Woodman refused to hear the Defendant-Appellant's pleadings at the next hearing even though it was previously ordered by the court. The Defendant-Appellant's objected to holding all of the Defendant-Appellant's motions in abeyance, pleading the parties' contract yet again. Even with this Judge Woodman completely ignored the pleadings and held all of the Defendant-Appellant's motions in abeyance to the inappropriate benefit of Plaintiff-Appellee's forced litigation tactics. This essentially stopped the Defendant-Appellant from arguing to the court the parties' contract.

The Alaska Supreme Court has already ruled that a person like this Plaintiff-Appellee cannot later claim waiver when that person who is represented by counsel and merely makes a calculated decision to pursue litigation in violation of an agreement to arbitrate. (*See case law brief Plaintiff-Appellee cannot claim waiver). This should be enough for the Defendant-Appellant to prevail in this appeal.

Defendant-Appellant's motion to compel arbitration also became mute when Plaintiff-Appellee filed with the Palmer Superior Court for an extension of time to file her opposition and then entered an appearance in arbitration and raised some arguments and also filed for an extension of time to file her brief and exhibits. Plaintiff-Appellee's stated reason for the extension of time in the arbitration was COVID-19 related issues. The arbitrator granted the extension of time for Plaintiff-Appellee. It was only after Plaintiff-Appellee received the arbitrator's partial final award that Plaintiff-Appellee then decided to file in the Palmer Court to stay arbitration. Plaintiff-Appellee was forum shopping again to see if she could get a better deal in arbitration.

Plaintiff-Appellee filed in Palmer Superior Court to following her plan to use the children as hostages or bargaining tool to gain a highly prized possessing, namely the green card and a pathway to American citizenship. This court can see form Exhibit 50, the Plaintiff-Appellee's clear plan to set up Defendant-Appellant and

the children for her end game…a green card. In Exhibit 51, the Defendant-Appellant outlies the immigrating scam, and the physical abuse to the children by Plaintiff-Appellee to gain the prized green card.

### h. The Palmer Superior Court's unclean hands

Judge Woodman in his footnote #2 claims the following trial dates incorrectly:

July 8, 2019 the hearing was continued because all of the parties 4 children (all under age 4) had contracted a highly infectious and transmittable virus. (note Plaintiff-Appellee refused to even visit the children for over 77 days while they were sick),

The February 18, 2020 the hearing was continued by the court so the court could take up other matters between the parties.

March 17, 2020 was continued by the court when the Plaintiff-Appellee failed to show up in person for the hearing. So, the record in Judge Woodman's order is again incorrect at best. And the Defendant-Appellant never presented any evidence in the Palmer Superior Court litigation, he merely defended his contractual right against the forced litigation conducted by the Plaintiff-Appellee. The Defendant-Appellant never sought a final judicial judgment from the Palmer Superior Court. Defendant-Appellant never began any litigation of his claims to the Palmer Superior Court before the Arbitrator was seated and ready to act.

Judge Woodman's bias and abuse of discretion of power has been clearly outlined throughout this case. Judge Woodman's orders and his order denying reconsideration of arbitration is at best a skewed version of truth to give credence to his unlawful orders in this case denying Defendant-Appellant's International foreign contracted right to arbitration. Further Judge Woodman violates the Alaskan Statues and also cites case law with no relevance to the parties' case or the court record. Judge Woodman never counseled Defendant-Appellant of his right to demand arbitration and in fact Judge Woodman has done his best to sweep the issue under the carpet so he can keep control. Judge Woodman so graciously put it at the brief March 2020 hearing when Defendant-Appellant's counsel asked the judge to adjust the interim custody schedule in favor of Defendant-Appellant to protect the children, Judge Woodman in essence said; "I am not prepared to do that at this time. Defendant-Appellant needs to learn to obey my orders." Judge Woodman uses helpless innocent and defenseless children as a tool to force parents into obedience of his every wish and demand. Judge Woodman has been and is now holding Defendant-Appellant's children as hostages to "teach me [the Defendant-Appellant] a lesson".

Judge Woodman's order also fails to cite that the Judge held a motion to strike the Defendant-Appellant memorandum and affidavit in support of his counter claims from the record for 7 months before issuing a ruling. Shortly after that

ruling the Defendant-Appellant filed a motion for reconsideration of that order and the court again held that motion for several months and then denied it citing that Judge Woodman could strike any pleading wanted to, even if it destroyed the integrity of Defendant-Appellant's pleadings and his case. The Defendant-Appellant realized that Judge Woodman ignored his pleadings and the parties' Indonesian contract and the binding arbitration clause in the case before him so adamantly that pleading the parties' contract further was of no value because Judge Woodman's continued bias was so evident. \Judge Woodman at the September 2, 2020 hearing on the numerous motions to dismiss with prejudice even asked Mr. Green that if he tough simply pleading the contract was somehow enough for the court to act on it. This indicates that the Palmer Superior Court judge intentionally ignored the Defendant-Appellant's repeated pleadings of the parties' Indonesian contact for Indonesian arbitration in this case.

The court delayed the proceedings several times by scheduling the parties' next hearing sometimes months later therefore stopping the Defendant-Appellant from addressing the issue in the Palmer Superior Court. From April 2019 until October 2019 the court did not schedule any hearings. Then from November 2019 until July 2020 there were no hearings in the Palmer Superior Court case. In all the court delayed the case over 15 months between the answer being filed and the motion to

<u>dismiss for lack of subject matter jurisdiction was filed by the Defendant-Appellant</u> <u>in this case.</u> Only one-half day hearing was held during those delays by the court.

Judge Woodman's denial order then states that the Defendant-Appellant filed 17 motions in this case. That is also a misleading statement by Judge Woodman. Let's identify those individual pleadings and their purposes.

The Defendant-Appellant knows of; 4 motions for reconsideration of abusive court orders, and 10 interim/preliminary motions to protect the children from continued physical child abuse, neglect, or because of the medical needs of the children had not been met by the Plaintiff-Appellee.

This court should note that the Palmer Superior Court is permitted by statutory authority to receive, hear and issue interim/preliminary motions and issue interim/preliminary orders until an arbitrator has been appointed and is ready to act. See the *Alaska Revised Arbitration Act AS 9.43.350,* and

There were 5 procedural motions because of the court's continual delays

Then Judge Woodman states in his order that "even though the court had not ruled on the Defendant-Appellant's motion to compel arbitration…". On September 2, 2020 in Judge Woodman oral findings he states, "you did not have my permission to begin arbitration in the first place." When does an American Citizen need 'permission' to exercise his contractual rights that are gained by an international contract?

This is where the court grossly errors and has further abused its discretion of power. Arbitration is a matter of contractual right. A right contracted by the parties', the right to arbitrate, is not gained by the Palmer Superior Court's "permission".

Defendant-Appellant already had the right to arbitration and the Plaintiff-Appellee gave up her right to file for litigation. She gave up her right to file in the United States court's, she gave up her right to file in any court or in any other country than Indonesian the contracting country. The Palmer Superior Court doesn't give "permission" to a contracted right according to the Supreme Court of the United States and Federal Law. Even Alaska State law does not support this idea that the court gives "permission to arbitrate" in a private court contracted and agreed beforehand by the parties. Indonesian law also has no provision for a party to a contract with a binding arbitration clause requiring the courts "permission" to arbitrate. The process of compelling arbitration is a statutory provision to ensure that binding arbitration clauses are upheld in our courts and the court in Indonesia. The statutes cannot be read to require "permission" from the courts to begin binding arbitration of "any and all disputes" as the parties' contract requires.

The only reason the Defendant-Appellant moved the Palmer Superior Court to compel the Plaintiff-Appellee to arbitration at all was so that both cases (the

Indonesian and Alaska case) could be arbitrated at the same time and the Plaintiff-Appellee had not made an appearance in the Indonesian Arbitration at that time.

The contractual agreement to arbitrate in a foreign contract limits the US Court's jurisdiction. When there is a question of an agreement to arbitrate in a US contract the court's only statutory function is to decide if an agreement to arbitrate exists. Then the court is limited by the applicable statutes to compel arbitration. However as soon as the Plaintiff-Appellee raises the issue that the entire contract is unconscionable then the entire matter must be referred to the arbitrator, not the court. (case law). The court also is authorized to issue interim orders to protect the status quo until the arbitrator is seated and ready to act. Once the arborator is ready to act the court is divested of all jurisdiction until the arbitration proceedings are complete.

Judge Woodman makes the assertion in his order that Defendant-Appellant filed an amended motion to compel arbitration on April 13, 2020, Defendant-Appellant can't find this filing in the court record and has no knowledge of any such filing.

The court order identifies that the arbitrator held a hearing on April 17, 2020 which it did. The court Order states that, "this court had not ruled on Defendant-Appellant's motion to compel arbitration…". The Arbitration appointment originated in Indonesia and the parties' contract was written, signed and filed with

the Indonesian government, and is governed under Indonesian law. Indonesian rules set the schedule and dictate the process of arbitration for an Indonesian Contact, not the Palmer Superior Court. The Arbitrator does not need "permission' from the Palmer Superior Court to do anything, the arbitrator and the arbitration secretary were both appointed under Indonesian law for an Indonesian contract and the appointed Arbitrator operates under that rule of law and is not subject to the Palmer Superior Court.

Next Judge Woodman gives a detail of the motion practice related to the arbitration and requested stay and reconsideration. What Judge Woodman doesn't tell in his order is that the Defendant-Appellant filed to compel arbitration on April 7, 2020 and the Plaintiff-Appellee filed for an extension of time to respond and did not file her motion to stay arbitration until after she has made an appearance and participated in the arbitration proceedings. Weeks later when the Plaintiff-Appellee didn't like the arbitrators partial final award, Plaintiff-Appellee filed in the Alaska Superior Court to stay the International Indonesian arbitration. Plaintiff-Appellee did not petition the Palmer Superior Court to stay arbitration until May 5, 2020, 10 days after receiving the arbitrator's partial final award.

The other thing Judge Woodman does not mention in his order is that he violated the Alaska laws and did not give the Defendant-Appellant a chance to respond to Plaintiff-Appellee's false allegations in her "cross-motion to stay

arbitration". This is an ongoing theme with Judge Woodman. He has denied the Defendant-Appellant's legal right to respond to pleadings multiple times, always favoring the Plaintiff-Appellee and showing his bias. There is no way any reasonable person could find Judge Woodman as an "impartial trier of facts".

Also, the Palmer Superior Court's order mentions the Plaintiff-Appellee's "notice of accelerated timeline" on May 14, 2020. This is another one of the Plaintiff-Appellee's games of trickery and deceit in the Palmer Superior Court proceedings. Defendant-Appellant's counsel requested the arbitrator to offer a more relaxed time schedule so Plaintiff-Appellee had more time to decide on legal representation and to file her paperwork. The arbitrator actually gave the Plaintiff-Appellee more time that she was not entitled to according to the law. Plaintiff-Appellee filed her 'notice' to the court using deception and deceit. But it is easy to see the court never actually read the Defendant-Appellant's pleadings in this case, because a wise and impartial judge would not have been so easily deceived.

Judge Woodman did move swiftly to stay arbitration, violating both the Alaska Laws, the Federal Law, numerus case law and even violating the United States Constitutional rights of the Defendant-Appellant again. Judge Woodman first cites his authority under *AS 09.43.020(a),* that arbitration should not have begun until the court ruled on Defendant-Appellant's motion to compel arbitration. If arbitration is a right, then the Defendant-Appellant does not have to wait for a

court to rule on his right, a right is asserted and not a privilege gained by permission from the court or that the court can interfere with.

The second statute Judge Woodman relies on to stay the ongoing arbitration proceeding is *AS 09.43.020(b).* Judge Woodman quotes stating; "the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate."

We must stop at this point in the court's analysis. **If nothing else the Defendant-Appellant has raised before this point matters, this is the crux that requires this court to reverse Judge Woodman's entire order. Neither of these statutes have anything to do with the parties' contract!**

Judge Woodman is either unaware or doesn't care that the Alaska Legislature enacted the Revised Arbitration Act in response to the United States Supreme Court's decision in 2005 strengthening and changing the national policy favoring arbitration, limited the courts involvement in an active arbitration and that the handling of arbitration as a matter of right. The Palmer Superior Court does not have any statutory authority to stay and arbitration proceedings under Alaska Law. Under Federal Law the court also lacks statuary authority to stay an ongoing arbitration proceeding. Judge Woodman in his ruling clearly states that Defendant-Appellant has a right to arbitration and the Revised Arbitration Act prevents the court from interfering.

The Alaska Legislature enacted the Revised Arbitration Act in 2007 and it specifically states in *AS 09.43.300; **(a)** AS 09.43.300 - 09.43.595*, that govern an agreement to arbitrate made on or after January 1, 2005.

Simply put, Judge Woodman is wrong and uses outdated legislation that has no relevance or authority for contracts dated after January 1, 2005. The parties' contract is dated August 2014.

### AS 09.43.340

*"**(a)** On application of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate under the agreement,*
*(1) if the refusing party does not appear or does not oppose the application, the court **shall order** the parties to arbitrate; and*
*(2) if the refusing party opposes the application, the court shall proceed summarily to decide the issue **and order the parties to arbitrate** unless it finds that there is no enforceable agreement to arbitrate."*

### AS 09.43.330

*"**(a)** An agreement contained in a record to submit to arbitration an existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract, and except as provided by (b) of this section.*
*"**(c)** **The court shall decide whether an agreement to arbitrate** exists or a controversy is subject to an agreement to arbitrate.*
*"**(d)** An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.*
*"**(e)** If a party to a judicial proceeding challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, **the arbitration proceeding may continue pending final resolution** of the issue by the court, unless the court otherwise orders."*

<u>**9 U.S. Code § 4.**</u>

*"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action ..., **for an order directing that such arbitration proceed** in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default."*

This court should immediately overturn this abusive judge orders and reprimand him in a meaningful way.

Federal law supersedes state law under the Supremacy Clause.

Neither the <u>*Federal Arbitration Act nor the Convention for the Recognition and Enforcement of Foreign Arbitral Awards*</u> has a provision to stay an ongoing International Foreign arbitration, for any reason. The only option for the court is, after arbitration is complete, to confirm the award unless one of the six enumerable defenses is successfully brought to stop the confirmation of the foreign award. Plaintiff-Appellee has never raised any of the required defenses.

Judge Woodman's Order further states, "that Plaintiff-Appellee in her motion to stay arbitration alleges the lack of an agreement to arbitrate the divorce and custody." Judge Woodman did not permit the Defendant-Appellant an opportunity that is required by the Alaska Statues to file an opposition to Plaintiff-Appellee's motion and show that Plaintiff-Appellee had clearly misled the court. The Defendant-Appellant's right to file an opposition, especially when Plaintiff-

Appellee raises new issues and arguments, it a matter of right. Judge Woodman violated the Defendant-Appellant's rights again.

This court can see from the "Plaintiff-Appellee's cross motion to stay arbitration", that she raises several issues; 1. Plaintiff-Appellee raises an issue that there is no agreement to arbitrate. She cites a case law where a party failed to provide the court with a page of the agreement…thus the court determined that that page was necessary to determine the totality of the arbitration clause. This is simply not the case; the Defendant-Appellant provided the Palmer Superior Court the entire contract with all three arbitration clauses are clearly visible and complete. 2. Plaintiff-Appellee further alleges; "That the assignment of the arbitrator would be unconscionable" 3. Plaintiff-Appellee also falsely assert's that custody and property are not a part of the agreement to arbitrate. This argument fails because the main arbitration clause states; "any and all disputes" custody and property are included in this broad and all-inclusive language.

Defendant-Appellant dealt with all of these false allegations in his opposition but the court never looked at either of the pleadings because Judge Woodman ruled before the Defendant-Appellant's pleading was filed. Judge Woodman denied the Defendant-Appellant his right of due process during this 'trial' several times.

This court can review all of the Defendant-Appellant's case law and argument's defeating every piece of case law in Defendant-Appellant's motion for reconsideration. (Ex. 10)

In interpreting the Federal Arbitration Act *Sussex v. U.S. Dist. Court for the Dist. of Nev. (In re Sussex) 781 F.3d 1065 (9th Cir. 2015)* the 9th Circuit Court of Appeals has held,

> *"a district court's authority is generally limited to decisions that bookend the arbitration itself.* **Before an arbitration begins**, *the district court has the authority to determine whether there is a valid arbitration agreement between the parties, and if so, whether the current dispute is within its scope." In re Sussex, 781 F.3d 1065, 1071 (9th Cir. 2015).* **The Act "does not suggest that a court could otherwise intervene before a final award is made,"** *id. At 1071-72, at which point, "the parties may petition the district court to affirm the award, or to vacate, modify, or correct it," id. At 1072. (citing (USC 9-11). Thus',* **judicial review prior to the rendition of a final award should be indulged, if at all, only in the most extreme cases."**

In *First Options of Chicago, Inc. v. Kaplan 514 U.S. 938 (1995)* • *115 S. Ct. 1920* stated,

> **"The answer to the narrow question whether the arbitrators or the courts have the primary power to decide whether the parties agreed to arbitrate a dispute's merits is fairly simple.** *Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., ante, at 52, so the question "who has the primary power to decide arbitrability" turns upon* **whether the parties agreed to submit that question to arbitration. If so, then the court should defer to the arbitrator's arbitrability decision.** *If not, then the court should decide the question independently. These two answers flow inexorably from the fact that arbitration is simply a matter of contract between the parties. Pp. " 939 942-943. *939*

In this case the parties' arbitration clause is very broad and specifically states; "any and all disputes", since arbitrability is a ligament dispute between the parties and not the court the broad arbitration clause would include any dispute of arbitrarily, thus leaving the question to the arbitrator not the court to decide.

Without statutory authority and in clear violation of the 9th Circuit Courts ruling Judge Woodman interfered in an ongoing International foreign arbitration proceeding. In actual fact the Indonesian Arbitration was completed on May 17, 2020 and at that point the award cannot be interfered with by the Alaska Superior Court at all. The US Courts don't have jurisdiction over foreign governments, foreign contracts and absolutely no authority of foreign arbitrations in progress.

## A. Standard Of Review

A dismissal with leave to amend is reviewed de novo. *See Kennedy v. Southern California Edison, Co.*, 268 F.3d 763, 767 (9th Cir. 2001); *Sameena Inc. v. United States Air Force*, 16 F.3d 1148, 1151 (9th Cir. 1998).

### 1. Dismissals

Venue. *See Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

Ripeness. *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1025 (9th Cir. 2005); *Ventura Mobilehome Cmty. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1050 (9th Cir. 2004).

*Feres* doctrine. *See Bowen v. Oistead*, 125 F.3d 800, 803 (9th Cir. 1997).

Subject matter jurisdiction. *See Prather v. AT&T, Inc.*, 86 F.3d 1097, 1102 (9th Cir.), *cert. denied*, 137 S. Ct. 2309 (2017); *Maronyan v. Toyota Motor Sales, USA, Inc.*, 658 F.3d 1038, 1039 (9th Cir. 2011); *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 787 (9th Cir. 2009); *Nuclear Info. & Res. Service v. United States Dep't of Transp.*, 457 F.3d 956, 958 (9th Cir. 2006); *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 n.2 (9th Cir. 2004).[41] Note that the court's factual findings relevant to its determination of subject matter jurisdiction are reviewed for clear error. *See Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189,

1195 (9th Cir. 2008); *United States v. Peninsula Communications, Inc.*, 287 F.3d 832, 836 (9th Cir. 2002).

Res judicata. *See Furnace v. Giurbino*, 838 F.3d 1019, 1023 n.1 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2195 (2017); *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

Dismissal on the pleadings pursuant to Rule 12(c) is reviewed de novo. *See Lyon v. Chase Bank USA, NA*, 656 F.3d 877, 883 (9th Cir. 2011); *Peterson v. California*, 604 F.3d 1166, 1169 (9th Cir. 2010); *Fairbanks North Star Borough v. United States Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008); *Dunlap v. Credit Protection Ass'n LP*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam).

### 2.   Subject Matter Jurisdiction

The existence of subject matter jurisdiction is a question of law reviewed de novo. *See Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1151 (9th Cir. 2017); *Atwood v. Fort Peck Tribal court Assiniboine*, 513 F.3d 943, 946 (9th Cir. 2008); *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 984 n.7 (9th Cir. 2004);*United States v. Peninsula Comm., Inc.*, 287 F.3d 832, 836 (9th Cir. 2002).[116] The district court's findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error. *See Prather v. AT&T, Inc.*,

86 F.3d 1097, 1102 (9th Cir.), *cert. denied*, 137 S. Ct. 2309 (2017); *Coyle*, 363 F.3d at 984 n.7; *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002); *Peninsula Comm.*, 287 F.3d at 836.

The existence of subject matter jurisdiction under the Foreign Sovereign Immunities Act is a question of law reviewed de novo. *See Gupta v. Thai Airways, Int'l, Ltd.*, 487 F.3d 759, 765 (9th Cir. 2007).[117]

Likewise, the district court's decision whether there is subject matter jurisdiction is reviewed de novo. *See Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016), *cert. denied sub nom. Mera v. City of Glendale, Cal.*, 137 S. Ct. 1377 (2017); *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946 (9th Cir. 2008); *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). The district court's factual findings on jurisdictional issues are reviewed for clear error. *See Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 703 n.9 (9th Cir. 2017); *Schnabel*, 302 F.3d at 1029.

1.          **Arbitration**

"The district court's decision to grant[5] or deny[6] a motion to compel arbitration is reviewed de novo." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). Whether a party defaulted in arbitration is a question of fact reviewed for clear error. *See Sink v. Aden Enter., Inc.*, 352 F.3d 1197, 1199

(9th Cir. 2003). Whether a party should be compelled back to arbitration after default is reviewed de novo. *See id.* at 1200.

The decision of the district court concerning whether a dispute should be referred to arbitration is a question of law reviewed de novo. *See Dean Witter Reynolds, Inc. v. Byrd*, 60 U.S. 213, 218 (1985) (Arbitration Act, by its terms, leaves no place for the exercise of discretion by a district court); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (same). Nevertheless, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).[7] Note that underlying factual findings are reviewed for clear error. *See Cape Flattery Ltd. v. Titan Maritime, LLC*, 66 F.3d 914, 917 (9th Cir. 2011); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001).

The validity and scope of an arbitration clause is reviewed de novo. *See Cape Flattery Ltd.*, 66 F.3d at 917; *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1284 (9th Cir. 2009); *Moore v. Local 569 of Int'l Bhd. of Elec. Workers*, 53 F.3d 1054, 1055 (9th Cir. 1995). Whether a party has waived its right to sue by agreeing to arbitrate is reviewed de novo. *See Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1154 (9th Cir. 1998). The meaning of an agreement to arbitrate is a question of law reviewed de novo. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1211 (9th Cir. 1998). The district court's decisions about the

arbitrability of claims is reviewed de novo. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1021 (9th Cir. 2016).

Confirmation[8] or vacation[9] of an arbitration award is reviewed de novo. *See First Options, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995); *New Regency Productions, Inc., v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105 (9th Cir. 2007); *see also Poweragent v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004) (noting review of the award is "both limited and highly deferential").[10]

The Supreme Court has stated that "ordinary, not special standards" should be applied in reviewing the trial court's decision upholding arbitration awards. *See First Options*, 514 U.S. at 948. Nonetheless, a labor arbitrator's award is entitled to "nearly unparalleled degree of deference." *See Teamsters Local Union 58 v. BOC Gases*, 249 F.3d 1089, 1093 (9th Cir. 2001) (internal quotation omitted); *Grammer v. Artists Agency*, 287 F.3d 886, 890 (9th Cir. 2002). Courts must defer "as long as the arbitrator even arguably construed or applied the contract." *See Teamsters Local Union 58*, 249 F.3d at 1093 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).[11]

An arbitrator's factual findings are presumed correct, rebuttable only by a clear preponderance of the evidence. *See Grammer v. Artists Agency*, 287 F.3d

886, 891 (9th Cir. 2002). Factual findings underlying the district court's decision are reviewed for clear error. *See Sink v. Aden Enter., Inc.,* 352 F.3d 1197, 1199 (9th Cir. 2003); *Woods v. Saturn Distrib. Corp.,* 78 F.3d 424, 427 (9th Cir. 1996). The court's adoption of a standard of impartiality for arbitration is reviewed de novo. *See id.*

Review of a foreign arbitration award is circumscribed. *See Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys, Inc.,* 665 F.3d 1091, 1103 (9th Cir. 2011); *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.,* 379 F.3d 796, 799 (9th Cir. 2004) (court reviews whether the party established a defense under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, not the merits of the underlying arbitration); *Ministry of Defense v. Gould, Inc.,* 969 F.2d 764, 770 (9th Cir. 1992) ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." (internal quotation marks and citation omitted)).

i.                                    **Res Judicata**

The trial court's determination that res judicata (claim preclusion) applies is reviewed de novo. *See Manufactured Home Communities Inc. v. City of San Jose,* 420 F.3d 1022, 1025 (9th Cir. 2005); *Littlejohn v. United States,* 321 F.3d 915, 919

(9th Cir. 2003) (noting mixed questions of law and fact).[102] The district court's dismissal on that ground is subject to de novo review. *See Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2195 (2017); *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). A trial court's grant of summary judgment on res judicata grounds is also reviewed de novo. *See City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 761 (9th Cir. 2003); *Akootchook v. United States*, 271 F.3d 1160, 1164 (9th Cir. 2001). Whether a party has waived its right to invoke the defense is also reviewed de novo. *See Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 735 (9th Cir. 1988) (res judicata).

i.                    **Amended Complaints**

The court's decision not to permit an amendment to the complaint is reviewed, however, for an abuse of discretion. *See Lopez*, 203 F.3d at 1130

Note that the district court's decision to grant leave to amend is reviewed for an abuse of discretion. *See Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 853(9th Cir.), *amended by* 312 F.3d 416 (9th Cir. 2002); *see also Metrophones Telecomms., Inc., v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1063 (9th Cir. 2005).

The trial court's denial of a motion to amend a complaint is reviewed for an abuse of discretion. *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 760 (9th Cir. 2017); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *Caswell v. Calderon*, 363 F.3d 832, 836 (9th Cir. 2004) (habeas); *Chappel v. Laboratory Corp.*, 232 F.3d 719, 725 (9th Cir. 2000) (finding abuse of discretion). "A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the Defendant-Appellant, or when it is sought in bad faith." *Chappel*, 232 F.3d at 725-26. The discretion is particularly broad where a Plaintiff-Appellee has previously been permitted leave to amend. *See Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

The trial court's decision to permit amendment is also reviewed for an abuse of discretion. *See Metrophones Telecomms., Inc, v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1063 (9th Cir. 2005); *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

A district court's order denying a Rule 15(b) motion to conform the pleadings to the evidence is reviewed for an abuse of discretion. *See Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1151 (9th Cir. 2007); *Madeja v. Olympic Packers*, 310 F.3d 628, 635 (9th Cir. 2002). The court's decision to grant

a Rule 15(b) motion is also reviewed for an abuse of discretion. *See Galindo v. Stoody Co.*, 793 F.2d 1502, 1512-13 (9th Cir. 1986).

A district court's decision to grant or deny a party's request to supplement a complaint pursuant to Fed. R. Civ. P. 15(d) is reviewed for an abuse of discretion. *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (per curiam); *Keith v. Volpe*, 858 F.2d 467, 63 (9th Cir. 1988).

i.                                            **Answers**

The court's refusal to permit a Defendant-Appellant to amend pleadings to assert additional counterclaims in an answer is also reviewed for an abuse of discretion. *See California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004). *See also Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764–65 (9th Cir. 2017) (no abuse of discretion in denying motion to amend answer to add four new defenses and a counterclaim).

The court's decision to strike an answer and enter default judgment as a discovery sanction is reviewed for an abuse of discretion. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

**i.**  **Pretrial Orders**

A court's refusal to enter a pretrial order is reviewed for an abuse of discretion. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th Cir. 2017) (noting the district court is given broad discretion in supervising the pretrial phase of litigation);

## CONCLUSION

For the foregoing reasons, this Court should hold that the International Indonesian foreign arbitration and arbitral award cannot be declared "null and void" by the Alaska Superior Court and reverse the lower court's decision and order that case be dismissed for lack of subject matter jurisdiction with prejudice.

Further, this court should take original jurisdiction and expedite the confirmation of both of the International Indonesian Foreign arbitration awards reference above, (Ex. 3, 5) and order the dismissal of the Palmer Superior Court case transferring the case to the US District Court for confirmation of the International Foreign Arbitration Award falling under the New York Convention of 1958 which is consistent with the law.

In Preston v. Ferrer, 552 U.S. 346 (2008) the United States Supreme Court held,

> "When parties agree to arbitrate **all questions** arising under a contract, the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, **supersedes state laws**

**lodging primary jurisdiction in another forum,** whether judicial or administrative. Pp. 4–16."

*9 U.S. Code § 203*

*An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States … **shall have original jurisdiction** over such an action or proceeding, regardless of the amount in controversy.*

and under 9 U.S. *Code § 9.*

*"If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding."*

This court should issue an immediate order that Plaintiff-Appellee and Defendant-Appellant alike shall immediately abide by and follow the Arbitrator's Final Award on All Issues dated May 17, 2020 as amended on July 5, 2020. (Ex 5)

This court should reverse Judge Woodman's decision denying the Defendant-Appellant motion to amend his pleadings and order the Palmer Superior Court to amend the Defendant-Appellant's pleadings as submitted based on the new evidence in the case.

In the alternative this court should reverse the Palmer Superior Courts finding staying an active International Indonesian arbitration and denying the motion to compel arbitration and order the parties to arbitrate "any and all

disputes" through binding arbitration as they contacted to in Indonesian under

Indonesian law.

September 24, 2020 *October 5*

Respectfully submitted,

The Law Office of Wayne Anthony Ross

Wayne Anthony Ross

*Attorneys for Defendant-Appellant Richard Green*

## STATEMENT OF RELATED CASES

We don't know of any other 9th Circuit cases currently before the court.

Date: ~~September 24~~ October 5, 2020

The Law Office of Wayne Anthony Ross

Wayne Anthony Ross

*Attorneys for Appellant Richard Green*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains less than 16, 000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word and Times New Roman 14-point font.

Date: ~~September 24~~ October 8, 2020

The Law Office of Wayne Anthony Ross

Wayne Anthony Ross

*Attorneys for Appellant Richard Green*

## CERTIFICATE OF SERVICE

I hereby certify that on October ___, 2020 I electronically filed the foregoing

with the Clerk of the Court for the United States District Court for the District of

Alaska by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

I have further served the parties by hand delivery and/or email of this appeal.


 Sara Fechtelkotter / ALS
1016 West Sixth Ave. #200
Anchorage, AK 99501

Sara sfechtelkotter@alsc-law.org

Ms. Dinh Hoangphuong0608@gmail.com


Date: September 24, 2020


The Law Office of Wayne Anthony Ross


_____

Wayne Anthony Ross

*Attorneys for Appellant Richard Green*

**ADDENDUM #1**

The Act Of State Doctrine Article

## Introduction

## History and development of the doctrine

> *Underhill v. Hernandez*
>
> *Banco Nacional De Cuba v. Sabbatino*
>
> *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*

## Basis of the doctrine

- Territorial Choice of Law
- International Law
- Separation of Powers

## Burden of Proof

## Act of state doctrine and sovereign immunity

## Exceptions to the doctrine

- State Department Intervention
- International Law exception
- Commercial Acts exception
- Statutory Exception

## Conclusion

## <u>Introduction</u>

It is well established that courts in United States will refrain from examining the validity of acts of foreign governments where those acts take effect within the territory of the foreign State. This rule, commonly known as the Act of State doctrine, has been stated and discussed by the U.S. Supreme Court in various cases. The Act of State doctrine says that a nation is sovereign within its own borders, and its domestic actions may not be questioned in the courts of another nation. The doctrine is not required by international law, but it is a principle recognized and adhered to by United States federal courts. Its aim is not to protect other nations' sovereignty by intervention from the U.S., but rather to protect the

US Executives' prerogatives in foreign affairs from being frustrated by a decision issued by U.S. Courts.

In deciding whether or not to apply the Act of State doctrine, and thus, grant immunity from inquiry to an act, a court must first of all consider whether the act in question is an "Act of State". The Act of State doctrine is applied to those acts carried out by a governmental official or body. There are two qualities for act of State. Firstly, the act must be that of a governmental body or of a body having governmental powers and must be carried out in the exercise of such governmental or sovereign powers. Secondly, the act in question must be a formal act or evidenced by formal action such as legislation or an executive order.

The acts of State officials will amount to an act of State where the official is acting in the exercise of his official functions. In deciding whether acts of officials are acts of State, the courts consider whether the official was acting in his public capacity. Likewise, when the official is acting for his own private benefit rather than for the benefit of the State, then such acts will not benefit from the application of the act of State doctrine.

### **History and Development of the Doctrine**

### *Underhill v. Hernandez* **168 U.S. 250 (U.S. 1897)**

The Act of State doctrine was initially developed in the US in cases against officials or agents of foreign governments and applied as a corollary to the personal immunity of foreign sovereigns. This connection between the Act of State doctrine and sovereign immunity is evident from a 19th century American case, *Underhill v. Hernandez* 168 U.S. 250 (U.S. 1897) which established the doctrine. In Underhill v. Hernandez, the Supreme Court held that a citizen of the United States was not entitled to recover damages in a United States court from a Venezuelan Military General who refused to issue a passport to him because the acts of the General were held to be acts of the Venezuelan government. According to Fuller C.J., in a statement which has come to be known as the "classic American statement" of the Act of State doctrine:

"Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves."

The decision in *Underhill v. Hernandez* strongly indicates that the doctrine had its origins in notions of sovereign equality and was based on the view that

international law imposed limits on the ability of States to exercise jurisdiction over other States.

### *Banco Nacional De Cuba v. Sabbatino*, 376 U.S. 398 (U.S. 1964)

The leading Supreme Court decision on the Act of State doctrine came in 1964 in *Banco Nacional de Cuba v. Sabbatino*. The case arose when Cuba nationalized its sugar industry, taking control of sugar refineries and other companies in the wake of the Cuban revolution. The case involved a claim by Cuba for the purchase price of a cargo of sugar which had been expropriated by the Cuban government, and then, sold to a US commodity broker (Farr, Whitlock & Co.). In addition to the Cuban claim, Farr was faced with a claim from the receivers of the original owner (Sabbatino) who argued that the Cuban expropriation was contrary to international law. Both the District Court and the Court of Appeals found for Sabbatino, holding that the Act of State doctrine was inapplicable where the relevant foreign act was in violation of international law. However, the Supreme Court reversed this decision. Justice Harlan applied the Act of State doctrine and held that US courts could not question the validity of the Cuban expropriations even if the plaintiff alleged a violation of international law.

In *Sabbatino*, the court held that If a transaction takes place in one jurisdiction and the forum is in another, the court merely declines to adjudicate or makes applicable its own law to parties or property before it. The refusal of one country to enforce the penal laws of another is a typical example of an instance when a court will not entertain a cause of action arising in another jurisdiction. The court further held that one nation must recognize the act of the sovereign power of another, so long as it has jurisdiction under international law, even if it is improper according to the internal law of the latter state. The court held that the justification for applying the doctrine would be weaker in cases where the relevant rules of international law are clear or where the government which performed the act is no longer in existence. Therefore, the court further held that:

"rather than laying down or reaffirming an inflexible and all-encompassing rule in this case, we decide only that the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law."

Although the *Sabbatino* decision was reached by a nearly unanimous Supreme Court, confusion arose which presently surrounds the doctrine. Congress expressed its displeasure about the decision by enacting legislation 22 U.S.C. §

2370 – the Second Hickenlooper Amendment. This legislation requires US courts not to refuse on act of State grounds "to make a determination on the merits giving effect to the principles of international law" in cases involving claims to property expropriated by foreign States after 1958.

### *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400 (U.S. 1990)

Although the Act of State doctrine was applied more broadly in the early cases, in 1990, the Supreme Court strictly limited its application to cases in which a court is required to determine the legality of a sovereign state's official acts under that sovereign's own laws. *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400 (U.S. 1990). In this case, the Court held that the doctrine applies only when a suit requires a court to declare invalid a foreign governmental act performed within its territory and does not preclude inquiry into the motivations of a foreign government. Although the plaintiffs alleged that the defendants had procured a contract from the Nigerian government by bribing officials of the Nigerian government, the court held that nothing in the case required a determination of validity of the foreign governmental act.

In *Kirkpatrick*, the Court reconfirmed that "Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them." To the extent that a case involves the "official act of a foreign sovereign," the Act of State doctrine applies only when a U.S. court must declare such official act "invalid, and thus ineffective as a rule of decision for the courts of this country.'"

### The Basis of the Doctrine

There are three principal theories to justify the application of the Act of State doctrine. Two of these theories, the "international law" and "territorial choice of law" theories, are theories of external deference which gained approval in the early Supreme Court cases establishing the doctrine. However, the third, the "separation of powers" theory is based on the theory of internal deference.

- **International Law**

In the early act of State cases, the courts were of the clear view that the Act of State doctrine was required by the universal comity of nations and the established rules of international law. In the opinion of the court, relief for wrongs committed abroad was to be sought either in the courts of the country where the wrong was committed or through international (i.e. diplomatic) means.

- **Territorial Choice of Law**

It has been argued that the early act of State cases utilized the Act of State doctrine as an aspect of the territorial choice of law principle. This is the principle that the validity of an act is to be determined by the law of the territory where the act took place. Thus, acts of the sovereign, or acts of state, done within the sovereign's own territory, are legally valid everywhere.

- **Separation of Powers**

The Act of State doctrine is based on separation of powers and reflects notions of internal deference. The Supreme Court in Sabbatino took the view that the basis of the doctrine was not external deference but internal deference, holding that the doctrine concerns "a basic choice regarding the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community. However, the Supreme Court has stated in *Kirkpatrick* that:

"Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them. The act of State doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."

**Burden of Proof**

When applying the balancing test to determine applicability of the Act of State doctrine, the party asserting the applicability of the doctrine bears the burden of proof. The party is required to offer some evidence that the government acted in its sovereign capacity and some indication of the depth and nature of the government's interest. Although precedent is not very much clear about the parameters of the official acts limitation, the Supreme Court has distinguished between public and governmental acts of sovereign states on the one hand and their private and commercial acts on the other. When the facts presented are not sufficient to demonstrate that the conduct in question was the public act of those with authority to exercise sovereign powers, the court should not presume that the conduct at issue was an official act of the foreign sovereign.

**Act of State doctrine and sovereign immunity**

Both the Act of State and the Sovereign Immunity doctrines are judicially created to effectuate general notions of comity among nations and among the respective

branches of the Federal Government. Unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the Act of State doctrine provides foreign states with a substantive defense on the merits. Under the Act of State doctrine, the courts of one State will not question the validity of public acts performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts. The Foreign Sovereign Immunities Act of 1976, in no way, affects application of the Act of State doctrine.

### Exceptions to the Doctrine

- **State Department Intervention**

In certain instances, the State Department may indicate, by letter to the Court, that U.S.' interests favor or disfavor application of the Act of State doctrine to a particular case or issue affecting a group of cases. The use and effect of such letters are sometimes referred to as the *Bernstein* and reverse-*Bernstein* exceptions; the former involving a letter indicating that the doctrine should not apply and the latter involving a statement that, in the view of the State Department, courts should presume that the doctrine does not apply to certain categories of cases unless the State Department affirmatively says so.

- **Commercial Acts Exception**

There is also a commercial activity exception to the Act of State doctrine. The state of the law concerning this exception varies from jurisdiction to jurisdiction. The Act of State doctrine does not cover private and commercial acts of sovereign states. It is necessary to balance a judiciary's interest in hearing a case involving a commercial activity with its desire to avoid matters of foreign affairs controlled by the executive or legislative branches.

- **International Law Exception**

The most popular exception to the Act of State doctrine is an exception which would permit US courts to adjudicate on the validity of foreign acts of State under international law. The international law exception originates from Justice Harlan's opinion in *Sabbatino*. Justice Harlan suggested that the Act of State doctrine would not apply if there was a "treaty or other unambiguous agreement regarding controlling legal principles" and that:

"the greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it, since the courts can then focus on the application of an agreed principle to circumstances of fact rather than on the sensitive task of establishing a principle not inconsistent with the national interest or international justice."

- **Statutory Exceptions**

It is not only the courts that have created exceptions to the Act of State doctrine. Congress, dissatisfied with the application of the doctrine in some cases has also created exceptions to the Act of State doctrine. The exceptions include:

### 1. The Second Hickenlooper Amendment Exception

In *Sabbatino*, the Supreme Court held that the Act of State doctrine barred U.S. courts from holding invalid an official act of expropriation by a sovereign state within the sovereign's own territory. In response, Congress passed the so-called "Hickenlooper Amendment," 22 U.S.C. § 2370(e)(2), which generally provides that the Act of State doctrine shall not apply to claims concerning alleged expropriations in violation of international law, "including principles of compensation." However the Hickenlooper Amendment can be overcome by executive-branch intervention.

### 2. Section 15 of the Arbitration Act

Under this section passed in 1988, enforcement of arbitral agreements, confirmation of arbitral awards, and execution upon judgements based on order confirming such awards shall not be refused on the basis of the Act of State doctrine.

### 3. Helms Burton Act

In 1996 Congress passed the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act [the Helms Burton Act] with a view to further tightening sanctions against Cuba. Under, 22 USCS § 6082 states that anyone who traffics in property confiscated by the Cuban government after January 1, 1959 is liable in US courts for damages to former owners of the property resident in the US. Trafficking is defined as including, knowingly and intentionally selling, transferring, distributing, managing, purchasing, leasing, receiving, possessing and using confiscated property. The Act further states that "No court of the United States shall decline, based upon the act of state doctrine, to make a determination on the merits in an action brought under paragraph (1)." 22 USCS § 6082(6).

### Conclusion

According to Supreme Court's decision in *Sabbatino*, application of the Act of State doctrine is dependent on whether the courts perceive the judicial action would interfere in the conduct of foreign relations. This has led courts to believe that they can pick and choose the factors to be taken into consideration in determining whether or not they should adjudicate on the validity of a foreign governmental act. As a result the courts have suggested various factors, limitations and exceptions to be taken into account in making this assessment. The history of the Act of State doctrine and many of its established features suggest the doctrine is better explained by international law considerations. The doctrine represents deference to the superior exercise of jurisdiction by the territorial State and prevents the U.S. from unlawfully extending its jurisdiction to situations and acts authoritatively determined by the territorial State. As such, the doctrine represents an acknowledgment that the US does not possess the legal competence to reverse the acts of foreign sovereigns carried out abroad. The doctrine therefore recognizes the co-equal status of foreign States and prevents an unwarranted intervention into the affairs of those States.

**ADDEMDUM #2**

*ORAL FINDINGS ON THE RECORD AT THE SPETEMBER 2, 2020*
*HEARING TO DISMISS WIT PREDJUDICE*

*"Judge: ... and even though the statute that I stated, AS-09-43-340, then requires the party seeking arbitration to apply for an order of the court to compel the arbitration which Defendant-Appellant did. He then proceeded with the arbitration, uh, in the absence of the court's order compelling the arbitration.*

*Defendant-Appellant: The arbitrators set the schedule. We have to follow it.*

*Judge Now, Defendant-Appellant. Here is the problem. The arbitration never should have started. If you ask the court for, uh, an order to arbitrate and to compel arbitration, the arbitration needs to wait for the decision on that motion. The arbitration never should have taken place in the first place.*

*Judge: So, the order, I mean the court can tell you right now. My idea with this is that the arbitration is null and void. Never should have begun. Having-having begun, the question then is- is the, uh, the decision of the arbitrator, uh, uh, a barge of this court's jurisdiction. Answer is no. That the-the arbitration never should have occurred. It never should have started. Having started it was invalid out of conception, and is now null and void because the court has found that there was a waiver of any arbitration, uh, right of arbitration that either party may have had by their extent of litigation to State Court."*

*Mr. Ross: [inaudible] of [inaudible] international tells and it says that the, uh—*

*Defendant-Appellant: United States court.*

*Mr. Ross: United State court secondary jurisdiction will reform or may not have [inaudible].*

*Defendant-Appellant: So the court cannot decide.*

*Judge: Right, but that was assuming there was ever a valid arbitration award in the first place which the court has just announced that in [inaudible], there never was.*

# ADDEMDUM #3

Law No. 30 of 1999
Arbitration and Alternative Dispute Resolutions

Article 2

This Law regulates the resolution of disputes or differences of opinion between the parties in a particular legal relationship that have entered into an arbitration agreement which explicitly states that all disputes or differences of opinion arising or which may arise from a legal relationship will be resolved by arbitration or through alternative dispute resolution.

Article 3

The District Court has no jurisdiction to try disputes between parties bound by an arbitration agreement.

Article 4

1. If the parties have agreed that disputes between them are to be resolved through arbitration and have granted such authority, the arbitrators have the authority to determine in their award the rights and obligations of the parties, if these matters are not stipulated in their agreement.
2. The agreement to resolve disputes through arbitration as specified in paragraph (1) must be contained in a document signed by the parties.

Article 7

The parties may agree that a dispute which occurs or which will occur between them will be resolved by arbitration.

Article 10

An arbitration agreement will not become void because of the circumstances mentioned below.

    (h) the main contract expires or is nullified.

Article 11

1. The existence of a written arbitration agreement eliminates the right of the parties to submit the resolution of the dispute or difference of opinion contained in the agreement to the District Court.
2. The District Court must refuse to and must not interfere in any dispute settlement which has been determined by arbitration, except in particular cases determined in this Law.

## Article 16

1. The arbitrator appointed or designated may accept or refuse the appointment or nomination.
2. The arbitrator must inform the parties in writing of the acceptance or rejection contemplated in paragraph (1), within 14 (fourteen) days as from the date of the appointment or designation.

## Article 36

1. The process of the dispute in arbitration must be conducted in writing.
2. Verbal examination is permissible based on the parties' consent, or if it is deemed to be necessary by the arbitrator or arbitration panel.

## Article 37

1. The venue of arbitration is determined by the arbitrator or the arbitration panel, unless it is decided by the parties themselves.

## Article 39

After receiving the statement of claim from the claimant, the arbitrator or the head of the arbitration panel will forward a copy of the claim to the respondent, together with an order that the respondent must reply and give its answer in writing within 14 (fourteen) days as from the date he/she/it receives a copy of the claim.

## Article 40

1. Immediately after receiving the respondent's reply a copy of the reply must be delivered to the claimant based on the order of the arbitrator or the chair of the arbitration panel.
2. At the same time, the arbitrator or the chair of the arbitration panel will order the parties or their attorneys to appear at an arbitration hearing determined within 14 (fourteen) days as from the issue of the order.

Article 44

1. If on the day determined, as contemplated in Article 40, paragraph (2), the respondent, for no valid reason, fails to appear, although the respondent has been duly summoned, the arbitrator or arbitration panel must immediately summons the respondent again.

2. If within 10 (ten) days after the respondent receives the second summons, the respondent, for no valid reason, still fails to appear at the hearing, the proceedings will be continued without the respondent, and the claimant's claim will be entirely accepted, unless the claim is groundless or is not based on law.

Article 52

Parties to an agreement are entitled to request a binding opinion from an arbitration institution on a particular legal issue in an agreement.

Article 53

No legal remedy is available to challenge the binding opinion contemplated in Article 52.

Article 58

Within 14 (fourteen) days after receiving the award, the parties may submit a request to the arbitrator or the arbitration panel to correct any administrative errors and/or to add to or reduce the award.

Article 60

The arbitration award is final and has a permanent and binding legal effect on the parties.

If the parties do not voluntarily implement the arbitration award, it may be enforced by an order from the Chairman of the District Court at the request of one of the parties to the dispute.

Article 62

4. The Chairman of the District Court will not examine the reasons or considerations for the arbitration award.

# EXHIBIT LIST

## US DISTRICT COURT APPEAL FROM JUDGE WOODMAN'S ORDERS
### (Each exhibit is listed in the body of the text)

Exhibit 1 – May 5, 2014 Email the proposed contract in the name Loan Hoang with rough draft between parties

Exhibit 2 – August 15, 2014 Didn't know her name until

Exhibit 3 – (Corrected) Partial Final Award April 16, 2020 corrected Mat 29, 2020)

Exhibit 4 – August 2014 Negotiating the Contract –

Exhibit 5 – (Corrected) Final Award of All Issues May 17, 2020 (corrected on July 5, 2020)

Exhibit 6 – August 28, 2014 contract received March 16, 2020 from Indonesia with appointment if arbitrator

Exhibit 7 – October 1, 2019 Defendant's deposition

Exhibit 6 – March 16, 2020 Email w Contract & appointment March 27, 2020 Contract emailed to Arbitrator

Exhibit 8 – March 18, 2020 Motion to amend the pleadings

Exhibit 9 – March 28, 2020 Arbitrators acceptance

Exhibit 10 – March 26, 2020 The demand for arbitration

Exhibit 11 – March 28, 2020 Arbitrator's acceptance

March 31, 2020 Notice that the arbitrator has been appointed

Exhibit 12 – April 1, 2020 Notice the arbitrator had been appointed

Exhibit 13 – Letter to Ms. Dinh International Arbitration is in progress

Exhibit 14 – April 7, 2020 Motion to compel arbitration

Exhibit 15 – April 13, 2020 Reply to plaintiff's opposition to motion to amend pleadings

Exhibit 16 – April 14, 2020 PD motion to Palmer court extension of time to oppose compelling arbitration

Exhibit 17 – April 15, 2020 Ms. Dinh entry of appearance and arbitration

Exhibit 18 – May 5, 2020 Her motion for extension of time in arbitration

May 7, 2020 Extension of time granted in arbitration

Exhibit 19 – May 5, 2020 Plaintiff memorandum for stay ARB

Exhibit 20 – May 15, 2020 Order granting extension of time to file opposition to motion to compel arbitration

Exhibit 21 – May 15, 2020 Missed 2nd arbitration trial hearing in arbitration grounds for default award

Exhibit 22 – May 13, 2020 Letter to Ms. Dinh our proposed award and possible default

Exhibit 23 – May 19, 2020 Woodman orders staying arbitration

Exhibit 24 – May 19, 2020 Woodman order denying arbitration

Exhibit 25 – May 18, 2020 Arbitrators partial final award (original award)

Exhibit 26 – May 25, 2020 Motion for reconsideration arbitration orders

Exhibit 27 – May 26, 2020 Defendants memorandum in support of opposition of plaintiff's motion to stay arbitration.

Exhibit 28 – Mat 27, 2020 Order inviting response to reconsideration of the May 19, 2020 court orders

Exhibit 29 – June 12, 2020 Reply and Memorandum to opposition for reconsideration

Exhibit 30 – June 22, 2020 Order denying to amend the pleadings and demanding we submit the amendments before getting leave from the court to amend based on the new evidence.

Exhibit 31 – June 29, 2020 Notice that the arbitration is complete

Exhibit 32 – May 25, 2020 Notice of reservation of right to appeal arbitration

Exhibit 33 – July 15, 2020 Order denying motion to vacate July 22, 2020 hearing

Exhibit 34 – July 17, 2020 Reply to plaintiff's opposition the motion to vacate July 22 hearing

Exhibit 35 – July 15, 2020 Order denying stay for appeal

Exhibit 36 – June 22, 2020 Woodman denying reconsideration

Exhibit 37 – July 28, 2020 Motion to amend the pleadings and motion to dismiss

Exhibit 38 – July 29, 2020 reply to plaintiff opposition to amend the pleadings

Exhibit 39 – July 31, 2020 Emergency motion stop interfering with arbitrator's award

Exhibit 40 – August 18, 2020 Notice of appeal to the ninth circuit court of appeals

Exhibit 41 – August 24, 2020 Notice that the motion to amend has not been ruled on in 124 days

Exhibit 42 – August 24, 2020 Order Scheduling of Hearing for Dismissal on September 2, 2020

Exhibit 43 – August 24, 2020 Trial setting notice November 2-4, 2020

Exhibit 44 – August 28, 2020 Trial brief for dismissal

Exhibit 45 – September 2, 2020 Transcription of the oral findings, denying dismissal

Exhibit 46 – September 4, 2020 Order denying this dismiss

Exhibit 6 – September 7, 2020 Notice of reservation of rights to file an appeal dismissal

Exhibit 48 – August 11, 2020 memorandum why staying arbitration is contrary to the law

Exhibit 49 – August 13, 2020 memorandum in support of Judge Woodman's clear bias and abuse of discretion of power

Exhibit 50 – July 31, 2020 Affidavit of Ak Security tech – iPad files and plan for immigration fraud

Exhibit 51 – Affidavit of Defendant-Appellant outlining immigration scam and physical abuse of the children with supporting documents.

Exhibit 52 – memorandum why the Rooker-Feldman and Younger doctrine's do not apply to confirmation of arbitration awards